(No. 15888.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. BERNARD GRANT, Plaintiff in Error.

*Opinion filed June 17, 1924.*

1. CRIMINAL LAW—*when a defendant participating in robbery may be found guilty of murder.* Where two men are engaged in robbery and one kills a third party in pursuance of the robbery both are equally guilty, and where the killing was caused by a shot fired from the revolver of one of the robbers while the third party, a policeman, was trying to take it away from him, the defendant, who tried to prevent the officer from taking the gun, may be found guilty of the murder although there is no direct evidence as to who fired the shot.

2. SAME—*when cross-examination as to defendant's conduct at inquest is not prejudicial.* In a trial for murder, cross-examination of the defendant as to whether he was present at the coroner's inquest and was there asked to testify or make a statement is not prejudicial, where no reference was made to his presence or conduct at the inquest until that matter was brought out by his examination in chief, even though the defendant's accomplice in the robbery which resulted in the murder testified at the inquest and had previously made a statement in the defendant's presence at the police station.

3. SAME—*when statement of accomplice is admissible against defendant.* Where two defendants are indicted for murder, which was the outcome of a robbery in which both participated, in a separate trial of one defendant a statement of his accomplice at the police station, in the presence of the defendant, is admissible against him on the murder charge although it amounts to a confession as to the robbery, only.

4. SAME—*correct instructions are not erroneous because not based on defendant's theory.* The People are entitled to have instructions presenting the theory of the prosecution as to how the crime was committed, and where such instructions are presented and state correct propositions of law they may be given, although they would have no application to the case on the theory contended for by the defendant.

5. SAME—*when instruction as to weight of confession of accomplice is proper.* Where two defendants are indicted for murder, which was committed while they were perpetrating a robbery, in a separate trial of one of them it is not error to instruct the jury that a confession is sufficient to justify a verdict of guilty

where the *corpus delicti* is proved beyond a reasonable doubt, where the defendant's accomplice made a statement to which he assented at the police station and which was admitted in evidence, although the statement amounted to a confession of the robbery, only. (*People* v. *Stapleton,* 300 Ill. 471, distinguished.)

6. SAME—*presumption of innocence is not to be regarded as evidence—instructions.* The presumption of innocence is a rule of law·by which the necessity for evidence may be determined but it is not itself evidence, and it is not error to refuse an instruction that such presumption is to be regarded as a matter of evidence of which the accused is entitled to benefit.

7. SAME—*when instruction as to manslaughter is properly refused.* In a trial for the murder of a police officer during a robbery in which the defendant participated, an instruction on the subject of manslaughter is properly refused where the evidence shows that the killing occurred when the defendant tried to prevent the officer from taking a revolver from his partner in the robbery.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding.

ELWYN E. LONG, and THOMAS E. SWANSON, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and EDWARD C. FITCH, (EDWARD E. WILSON, CLYDE C. FISHER, and WILLIAM SCOTT STEWART, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error, with Walter Krauser, was indicted on the charge of murder for killing Ralph Souders, a policeman of the city of Chicago, on December 19, 1922. Separate trials were had. Plaintiff in error was convicted and his punishment fixed at death. He brings the cause here for review, contending that the evidence does not establish the crime of murder; that the court admitted incompetent and prejudicial evidence; erred in giving and refusing instructions; and that the evidence fails to establish the guilt of plaintiff in error beyond a reasonable doubt. Present

counsel for plaintiff in error did not engage in the trial of the case.

The defense was an alibi. Plaintiff in error took the stand and denied that he was in the neighborhood of the scene of the crime. He testified that he was at home in bed all of the morning of December 19. The defense introduced witnesses to corroborate this statement.

On December 19, 1922, Ralph Souders, a police officer, was shot and killed in an Atlantic and Pacific tea store, at 5361 Morgan street, in the city of Chicago. Souders had been stationed in this store as a protection against hold-up men. Daniel W. Glass, manager of the tea store, was present at the time of the killing of Souders. According to his testimony, about 8:30 o'clock in the morning of the 19th two men entered the store. One of them drew a gun and ordered him to hold up his hands. The other went behind the counter to the cash drawer and opened it and took money out of it. Glass was ordered by the man with the gun to walk to the back part of the room, which he did. The store room faced west on Morgan street, was twenty-five feet in width and about forty-five feet in depth. The counters ran along the north side. At the back of the room a small room was partitioned off by a seven-foot partition and used as an additional store room. A doorway without a door opened into it from the main store room. This doorway was at the south side of the room. Glass testified that the police officer was in this back room at the time witness was directed to go in; that after he had gone into the back room he heard another order, "Put up your hands!" and upon turning saw the police officer standing about nine feet away; that the officer put up his hands and started to walk toward the man with the gun until he got about a foot and a half from him; that the man with the gun told the officer to keep his hands up, and the officer said, "They are;" that the man with the gun then called

to his companion to "get the copper's gun;" that the officer sprang upon the man with the gun as the other came up and the three struggled together; that witness heard a shot fired; that he then ran behind the end of a row of canned goods to avoid injury and very shortly thereafter two more shots were fired in quick succession; that he noticed that as the first shot was fired the officer was stooping, as if he were trying to get the gun away from the hold-up men; that he did not see the men when the other shots were fired, as he was behind the canned goods, but he heard the men run out of the store, and looking around saw the officer lying on his back on the floor; that the officer did not speak to him when he ran up to him; that his gun was still in his holster; that he took the officer's pistol out of the holster, ran out on the street and fired two shots in the air; that he saw no one and fired another shot, ran into a candy store and called up the police. He identified Krauser as the man who had the gun. He testified that at the time of the hold-up this man had on an overcoat with a black collar and wore a cap. The gun with which the killing was done was picked up in the store when the body was removed. It contained three empty shells and two loaded ones.

Harry Krohn, a machinist, testified that about 8:30 o'clock he was in the neighborhood of this store, coming home from work; that he saw two young fellows coming down the street; that one had on a cap and overcoat and the other was without cap or overcoat. Krohn identified the plaintiff in error as one of the men, and stated that he had seen Krauser in the county jail and that he was the other man he had seen that morning; that he was within ten feet of them.

Charles P. Regan, a police officer, testified that he was on his beat in the vicinity of this store building on the morning of December 19; that he saw Krauser, accompanied by another man, on that morning. He identified the

plaintiff in error in the court room as being the man with Krauser. He had known Krauser previous to that time. It was about 8:30 in the morning. He testified that he later saw the plaintiff in error at the police station.

Mat Peters, a milkman, testified that he was in the neighborhood of this store on the morning of December 19; that he heard three shots fired in succession; that at that time he was in front of his house, about two blocks from the store; that after hearing the shots he saw two men come around the alley and go east, running; that the man running behind dropped his coat; that witness walked across and got the coat and went to the tea store; that when the officers came he gave the coat to them. Witness identified Krauser's coat as being the one he picked up at that time. His description of the man referred to as the "big man" tallied with Krauser's description. He testified that the big man had on no cap or hat; that the other man was small and had on a cap.

Herbert H. Burns arrested plaintiff in error at his home, No. 614 Forty-seventh place. The arrest took place about the time of the evening meal on the day of December 19. He testified that on searching plaintiff in error he found two street car transfers on him. These transfers were identified and introduced in evidence and showed that they had been issued the morning of the 19th. According to the testimony of the street car conductor issuing them, they had been issued shortly after eight o'clock that morning.

Krauser was arrested on the evening of December 19 at the Dover Hotel, and he and Grant were later in the evening taken to the Stock Yards police station, where, in the presence of a number of police officers, detectives and others, Krauser made a statement. According to the testimony of the State's witnesses, plaintiff in error was in the room at the time the statement was made, although but few questions were asked him. The witnesses present at

that time testified that Krauser said in his statement that he and plaintiff in error went into this store that morning for the purpose of robbery; that he told the man in the store to hold up his hands, and he did so; that plaintiff in error went to the till and secured the money that was in it; that he (Krauser) told the man in the store to go into the back room, and holding the gun on him followed him back and there saw the deceased; that he knew he was a police officer; that he knew that an officer had been assigned to protect stores in that neighborhood from robbery; that he told the officer to hold up his hands, and that the officer did so but walked toward him; that he told him to "keep them up," and the officer said they were up; that he (Krauser) called to plaintiff in error to come and "get the copper's gun;" that as the plaintiff in error came up the deceased seized his (Krauser's) hand that had the gun and they struggled for possession of it; that plaintiff in error punched the officer in the face; that the gun was wrenched out of Krauser's hand and fired by the deceased, the bullet passing through Krauser's left arm. He also stated that the officer then shot himself twice through the body, and that at the second shot the gun dropped from the policeman's hand and he (Krauser) and plaintiff in error ran from the store. Numerous witnesses for the State who testified that they were present when this statement was made say that at the close of the statement Grant was asked if the statement was true, and he said that it was except that he did not strike the policeman; that he was at the till, getting the money, when he heard the shots fired, and he ran out of the store ahead of Krauser.

Plaintiff in error on the stand denied that he made any statement or was present at the time Krauser's statement was made, and denied having been in the store with Krauser at the time. His story on the stand was that on the morning of December 19 he was in bed all morning; that he got up about noontime; that he had nothing to do with

the robbery and did not go with Krauser into the store;
that he had never seen the deceased; that he did not have
any transfers in his pocket at the time of his arrest; that
no one asked him to make a statement and he did not make
one; that he did not wear a cap; that he had not worn a
cap since he was a boy. He told a sensational story of
abuse,—of cruel beatings given him by the police; that his
head and face were marked up from the beatings; that
this occurred the night of his arrest, and that he was beaten
by the officers until he was unconscious. In his defense of
alibi he is corroborated by John Grant, a brother; Mary
Grant, his mother; Bertram Grant, his father; Mary Mal-
loy, a friend, and Mrs. Margaret Malloy, her mother,—all
of whom testified that plaintiff in error was at home that
morning. Some of these witnesses testified to seeing him
in the jail and that his face was bruised.

Michael J. Grady, a police officer, testified that he ar-
rested Krauser at the Dover Hotel and took him to the
police station; that he talked to Krauser, and later to the
plaintiff in error and Krauser at the Stock Yards police sta-
tion about three o'clock in the morning of December 20;
that there were present at that time but the three of them;
that prior to the conversation with Grant, Krauser had told
witness his story of the hold-up and the killing as he later
that morning told it in his statement to the assistant State's
attorney and others; that the latter statement was reduced
to writing and was made about four or five o'clock in the
morning of December 20, at the Stock Yards station; that
after he had talked to Krauser, and before the assistant
State's attorney arrived, Krauser said to Grant: "Nagles,
I have told Grady or the lieutenant the truth; I told him
we were in that store on this morning at Fifty-fourth and
Morgan and we stuck up the place; before that we were
out doing other places." Grady testified that Krauser fur-
ther said to Grant, "I told him we were out to another
place, and when we went in there I got shot in the arm,

and I had a gun and the officer shot himself with my gun." Grady testified that he said to Grant, "Is that true?" and he said, "Well, yes;" that he asked him how much money he got out of the till, and he said $10 or $12, and that it was later divided. This witness testified that the statement was made to him without any promises of immunity or threats.

About four o'clock in the morning of December 20 William McLaughlin, an assistant State's attorney, arrived at the station and statements of Krauser and the plaintiff in error were taken. There were present, aside from McLaughlin, James J. Sullivan, the stenographer, who took the statements in shorthand; William Best, Anthony Smith, William F. Russell and Herbert H. Burns, police officers; Charles C. Fitzmorris, superintendent of police; Michael Hughes, chief of detectives; Carlos Ames, civil service commissioner; Arthur G. Hoadly, general superintendent of Atlantic and Pacific tea stores; Charles P. Wilson, field superintendent for the Atlantic and Pacific tea stores; and George E. Gorman, assistant State's attorney,—all of whom testified to the taking of the statements of Krauser and Grant and of the presence of Grant at the time of Krauser's statement. Several of these witnesses testified to the statement of Grant as to the truth of Krauser's statement as herein detailed. All of them testified that there was no evidence of violence on the person of plaintiff in error and that no offers of immunity or threats were made to either Krauser or Grant. A number of these witnesses testified that the assistant State's attorney, before taking the statements, warned both Krauser and Grant that the same might be used against them. Frank Ciprani, a newspaper reporter, testified that he was in court on December 22 when plaintiff in error was brought into the superior court presided over by Hon. M. L. McKinley, and that he noticed nothing unusual about the appearance of plaintiff in error. Judge McKinley gave testimony to the same effect.

Concerning the alibi offered by plaintiff in error, to the effect that he was at home, asleep, on the morning of December 19, John Crisone and John Scribano, barbers operating a shop in the neighborhood of plaintiff in error's home, testified that they saw him about their shop at about 9:30 on the morning of December 19. Nicolai Clausen, manager of an Atlantic and Pacific tea store at 7305 South Racine street, testified that plaintiff in error and Krauser were in his store together about 7:30 of the morning of the homicide. In addition, other witnesses, as we have seen, testified to seeing them together on that morning.

Dr. Joseph Springer, the coroner's physician, testified to an examination of the body of the deceased, stating that the deceased had received two bullet wounds,—one three inches above the navel and two inches to the left; that this bullet passed along under the skin for four or five inches, lodging in the muscles; that the second bullet entered the right breast two inches below and two inches to the left of the right nipple and passed back toward the left, through the heart and left lung, and passed out between the fourth and fifth ribs on the left side of the back; that he found and removed two bullets; that the first one described he found in the flesh and the second in the clothing at the back of the body; that the bullets were 38-calibre and corresponded to the revolver and cartridges found near the body. He testified that these shots were fired so close to the deceased as to burn the skin through the clothing; that in the case of the shot through the heart, burnt powder was found underneath the skin, imbedded in the muscles, and that he found powder burns on the shirt of the deceased where the other bullet had entered. He also testified to having examined the coat which the evidence shows belonged to Krauser, and that it had a bullet hole in the left sleeve which corresponded to the wound which Krauser's statement shows he received in the encounter. This recital of the evidence demonstrates that the jury were fully war-

ranted in disbelieving the statement made by plaintiff in error that he was not present at the time of the hold-up and shooting.

Plaintiff in error's first contention is, as we have seen, that the evidence does not show the commission of a crime of murder; that the only evidence of what happened is the statement of Krauser and the testimony of Glass; that Krauser's statement was that the policeman shot himself, and that Glass testified he could not see who did the shooting. We are of the opinion that Krauser's statement that the deceased shot himself is utterly disproved by the silent evidence of the wounds themselves. Both Krauser's statement and Glass' testimony show the last two shots to have been fired in rapid succession. It is inconceivable that the police officer shot himself twice in the abdomen. The fact of the struggle of the three men as testified to by Glass, and the nature of the wounds themselves, show beyond a reasonable doubt that the directing of the gun at the time the fatal shots were fired, if not the actual pulling of the trigger, was done by hands other than those of the deceased. The three men were there in the struggle. The deceased was shot by a gun belonging to one of the two attempting the hold-up. Where two men are engaged in robbery and one kills a third party in pursuance of the robbery both are equally guilty. (*People* v. *Anderson,* 239 Ill. 168.) We are satisfied that the proof of the crime is sufficiently established and that the jury were justified in their verdict.

Plaintiff in error complains of errors in the admission of incompetent testimony. Concerning this assignment of error, counsel urge that the cross-examination of plaintiff in error regarding the coroner's inquest was prejudicial; that plaintiff in error did not testify at the inquest, but that the People, on cross-examination, questioned him as to Krauser's statement there made in his presence, and brought out the fact that he (Grant) made no reply to it; that no cross-

examination of him should have been permitted concerning the matter. An examination of the record discloses that no reference was made to the presence or conduct of plaintiff in error at the inquest until that matter was brought out by his examination in chief. No reference to the inquest was made in the People's case in chief. Krauser testified at the coroner's inquest. Grant was taken to the inquest, and after Krauser testified was asked if he desired to make a statement. He was warned by the assistant State's attorney that any statement that he made might be used against him, and he answered that he did not desire to make a statement. A reading of this cross-examination as set out in the abstract discloses that he was asked if he had been at the inquest, whether he had heard his name mentioned by Krauser, and whether he heard Krauser say he had taken part in the robbery. He testified that he had heard his name mentioned but that he did not hear what Krauser was testifying about. He was asked whether he saw different witnesses at the inquest, and as to most of them said that he did not. He stated that he was not warned as to the statement being used against him; that nothing of that kind happened. He was asked on cross-examination whether or not at the coroner's inquest the deputy coroner inquired whether he desired to testify, to which he had replied, "No," and he answered that this was true. He stated, however, that he was from twenty to twenty-five feet away from Krauser and did not hear what he was saying or testifying to and did not hear him tell the story at the coroner's inquest.

Plaintiff in error contends that to cross-examine him about that occurrence when he did not testify at the coroner's inquest had the effect of giving the impression to the jury that he was given an opportunity to testify before the coroner's jury and after being warned was afraid to do so. While this examination takes up a number of pages of the abstract, it shows that but three objections were interposed

by counsel representing plaintiff in error in the trial court, and these did not go to the question of the competency of the cross-examination objected to here. Counsel have cited numerous cases concerning the rule as to admissibility of evidence of a statement made in the presence of the defendant where he remains silent. Those cases are not applicable here. Plaintiff in error had taken the stand and had denied having anything to do with the matter, and denied having been present when Krauser's statement was made at the police station, or that he said at the police station that Krauser had told the truth except that he did not strike the deceased officer. Krauser's statement made at the police station had gone to the jury in the People's case in chief. No attempt was made by the People to give in evidence Krauser's statement at the inquest, and no effort was made in the State's case to prove assent, by silence, at the coroner's inquest.

Counsel argue that to have interposed an objection to the truth of Krauser's statement at the inquest, had the plaintiff in error heard it, would be to interrupt orderly procedure in the conduct of the inquest, and that plaintiff in error should not be required to do so. And that is true. If the State's evidence is to be believed, however, plaintiff in error sat, not twenty-five feet but eight or ten feet away from Krauser during the taking of Krauser's statement at the coroner's inquest, and instead of having to break into an orderly procedure in order to make a denial, the State's evidence tends to show that after Krauser's statement was taken plaintiff in error was asked if he cared to make a statement and at the same time was warned it would be used against him, and that he replied that he did not; that they had his statement made at the police station. This is not, as we view it, a case where a statement or confession is sought to be introduced as evidence on the ground that it was made in the presence of the defendant and the defendant assented thereto by silence. If plaintiff

in error be believed, he did not hear Krauser's statement at the inquest. There could therefore be no element of assent in his silence there. If the State's witnesses are to be believed, he could hear and was given an opportunity to deny Krauser's story. He was not prejudiced by this cross-examination. The statement at the police station was not offered as a statement of an accomplice to which the defendant assented by silence, but was testified to by numerous witnesses as a statement of Krauser made in the presence of the plaintiff in error, and which statement he then and there said was true, with the exception of a reference to his having struck the deceased officer. While it would not have been error to sustain objections to parts of this cross-examination of plaintiff in error, no objections were offered.

It is also contended that it was error to allow the statement of Krauser, made in the presence of plaintiff in error, to be read in evidence; that it was a statement and not a confession; that while it was a confession of a robbery, it was not competent as against plaintiff in error under a murder charge. Krauser's story told to the policemen was his version of what happened at that time and place. Plaintiff in error was present when it was told and according to the State's evidence assented to the truth of it, with the exception noted. The statement was competent as evidence against plaintiff in error.

We have searched the record and do not find reversible error in the admission of testimony.

Plaintiff in error's last contention is that the court erred in giving and refusing instructions. Instruction No. 4 informed the jury as to the liability of parties to a joint perpetration of a felony. Nos. 5 and 9 objected to, instructed the jury as to conspiracy. No. 13 told the jury that the law presumes that a sane person contemplates all the natural, probable and usual consequences of his act. The principal objection to these four instructions is, not that they

313—6

do not present correct propositions of law, but that the only evidence of the killing in the record is that of Krauser, which shows that the policeman killed himself, and therefore, while these instructions would be good if the killing had been done by others than the deceased, it was error to give them here. The People contended that the killing was done by Krauser or Grant, and they were entitled to have instructions presenting their theory of the case. These instructions were not erroneous.

Instruction No. 14 told the jury that the intent alleged in the indictment is necessary to be shown but that it need not be shown by positive and direct testimony. It is argued that this instruction is erroneous for the reason that since, as counsel contend, the deceased killed himself, there could be no intent on the part of plaintiff in error shown. This contention is without merit. The People were entitled to an instruction on their theory of the case.

Instruction No. 28 is objected to. This instruction told the jury that where the *corpus delicti* had been proven beyond a reasonable doubt, independent of a confession, a confession, if the jury believe it to be true, is sufficient to justify a verdict of guilty. Plaintiff in error contends that the statement of Krauser was not a confession but a statement of what happened. We think this argument is not sound. Krauser's statement was a confession so far as the participation in the robbery was concerned. While his story as to how the deceased met his death is contradicted by physical facts and other evidence shown in the record and does not amount to a confession of murder, yet the whole story was competent whether it be called a confession or a statement, and it was not error to so instruct the jury. Counsel cite *People* v. *Stapleton,* 300 Ill. 471, as authority for the contention that it was error to give this instruction. In that case, however, there was nothing in the statement given which amounted to a confession. This, as we have seen, is not true here.

It is further objected that the court erred in giving too many instructions on reasonable doubt; that five were given at the instance of the People. An examination of these instructions, however, shows that but two instructions were given on the question of what is and what is not reasonable doubt. We find no reversible error in giving instructions.

It is also contended that the court erred in refusing to give an instruction telling the jury that the presumption of innocence is to be regarded as a matter of evidence of which the accused is entitled to benefit. Plaintiff in error cites decisions of other courts in support of that contention. While it appears from a statement made in an early edition of Greenleaf on Evidence that the presumption of innocence is to be considered a matter of evidence, that statement has not been generally followed, but the great weight of authority, as well as the weight of reason, holds that the presumption of innocence is not to be regarded as evidence. (*Agnew* v. *United States,* 165 U. S. 36; *Holt* v. *People,* 218 id. 245; *Commonwealth* v. *Sinclair,* 195 Mass. 100; *Quigley* v. *State,* 26 R. I. 263; *Culpepper* v. *State,* 4 Okla. Crim. 103; 4 Wigmore on Evidence, sec. 2511.) It is a rule of law by which the necessity for evidence may be determined but is not itself evidence.

It is also contended that the court erred in not giving an instruction on the subject of manslaughter. This contention is without merit. In any view of the case the killing could not have been manslaughter. The killing was murder or was done by the deceased himself. Under such circumstances it is error to give a manslaughter instruction on the part of the State, and if offered by the defense it should be refused. *People* v. *Schultz,* 267 Ill. 147.

We are of the opinion that there is no reversible error in the record, and we have no doubt as to the proof of guilt of the plaintiff in error.

The judgment will be affirmed, and the clerk of this court is directed to enter an order fixing the period between

nine o'clock A. M. and five o'clock P. M. on Friday, the
17th day of October, 1924, as the time when the original
sentence of death entered in the criminal court shall be exe-
cuted. A certified copy of that order will be furnished by
the clerk to the sheriff of Cook county.

*Judgment affirmed.*