(No. 22308.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. TONY FORTINO et al. Plaintiffs in Error.

*Opinion filed April 21, 1934—Rehearing denied June 8, 1934.*

W. W. O'BRIEN, (THOMAS J. MCCORMICK, of counsel,) for plaintiffs in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, J. ALBERT WOLL, and HENRY E. SEYFARTH, of counsel,) for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

The defendants, Tony Fortino and George Nudo, were in the criminal court of Cook county found guilty of robbery and sentenced to the penitentiary. They now prosecute a writ of error.

The prosecuting witness was Edward Fairweather. According to his testimony he came home from his meat market a few minutes before seven o'clock P. M., January 24, 1933. He entered the vestibule on the ground

floor of the building and was immediately followed by two men, one of whom struck him across the back of the head with a blunt instrument. He was knocked down and then terribly kicked and beaten. Fifty dollars was taken from his pocket. He was later carried up-stairs and was unable to leave his home for five months. Shortly after the robbery the police were notified and officers McCoy and Knight responded, as did also someone connected with the Crime Commission. Fairweather was in great pain and agony but was able to tell the officers something of his experience. A brief report was made by officer McCoy. That report is not shown in the record, but McCoy testified that Fairweather said one of the robbers was a man twenty or twenty-two years old, six feet tall, of sandy complexion, had blond hair and wore a brown suit, and that the other man was shorter. Fairweather did not know which one hit him from behind. On the trial he positively identified the defendants as the men who robbed him.

The defense interposed was an alibi. Each defendant testified that between the hours of six and seven o'clock P. M. on said day they were in the gymnasium at Grand Crossing Park, practicing basketball; that they were members of a team called "Jaljics," which team belonged to a league; that they practiced every Tuesday and Thursday at said gymnasium from six to seven o'clock P. M., and that they were there on Tuesday evening of January 24, 1933. Both defendants lived near the gymnasium and also within a few blocks of Fairweather's home.

Fortino testified he was twenty-two years of age and about five feet ten inches tall; that he has not blond hair or a sandy complexion; that he conducted the Certified Tennis Racket Company across from Grand Crossing Park for about three years; that he was arrested July 17, 1933, and when released on bail went to the gymnasium and obtained information from schedules and scores of games in which the Jaljics had taken part; that from this in-

formation he knew he practiced on Tuesday, January 24. As another reason for knowing he did so, he said that it was the first time he went to a dance with Joseph Bruno.

The defendant Nudo testified he was employed in April and May peddling vegetables and occasionally worked at the Fair; that he had assisted in making a check of the schedules and scores at the gymnasium and from that check knew he was there at the time when the robbery was alleged to have occurred; that it was impossible for anyone to leave the gymnasium during the hours of practice, and that after he finished practicing on the night of January 24, 1933, he took a shower bath and stayed around the park for a while. Both defendants denied participation in the robbery.

James Pace, a witness for the defendants, testified that he had known them about twelve years; that on January 24, 1933, he met them at the Grand Crossing Park gymnasium at basketball practice; that he was captain of the Jaljics team, and it practiced each Tuesday and Friday evening; that he had no recollection of either defendant ever having missed practice; that the members of the regular team were Fritz Dugal, Tony Fortino, George Nudo, Sam Rocko and himself; that the substitutes were Charles Kelly and Frank Precy; that the team practiced that week on Monday, Tuesday and Friday, because it had recently lost a game which he felt should have been won and he ordered all regulars and substitutes to be on hand.

Joseph Bruno, a witness for the defendants, testified he had been acquainted with them a number of years; that he was a member of another basketball team which practiced at the Grand Crossing Park gymnasium; that his team also practiced between six and seven o'clock P. M. on January 24; that he had an appointment to go to a dance with Fortino that evening; that he met him within five minutes after seven o'clock in the bath-house; that Nudo and the witness Pace were also there; that he and Fortino

left the park about a quarter to eight o'clock and went to the dance at Sixty-third street and Drexel boulevard.

Fairweather testified that when he was physically able .to leave his home he went to Grand Crossing Park several times looking for the persons who robbed him. He believed his assailants were young Italians and he knew people of that nationality frequented the park. On one of his visits he saw Fortino and the next day reported the fact to officer Burke. Two or three days thereafter the defendants, Fortino and Nudo, and also a man by the name of Riffice, were arrested and taken to a police station. Fairweather went there at the request of the police. The prisoners were brought in for a "show-up." Fairweather pointed out and identified Fortino and Nudo as the two men who robbed him. Much stress is placed by counsel for the defense on the fact that Fairweather signed complaints against all three men. It is urged that his conduct in so doing should have an impeaching effect and that it tends to show his identification was not clear and dependable. The complaints were not prepared by Fairweather, and, though he signed them, it is clear from the record that he did not identify Riffice as a participant in the crime, but, on the contrary, said he was not in the vestibule. Riffice was later discharged and was not indicted for the offense. We think the facts concerning the complaint against Riffice have been over-emphasized by the defendants. The circumstances surrounding them appear to make the testimony of the complaining witness more positive and definite.

Counsel for the defendants criticise the identifications made at the police station as faulty and unreliable. In support of their position they cite *People* v. *Crane,* 302 Ill. 217, in which it was said: "Where one under arrest is brought alone before persons who are present for the purpose of identifying an assailant and who know that the person arrested is to be brought before them for identification, it is not unlikely that such surrounding circum-

stances might influence one who seeks to identify an assailant. Certain it is that such an identification cannot be given the same weight and credibility as where the witness had picked out the assailant from a number of persons unknown to her." In that case Crane was the only person exhibited to the witnesses, who were two girls about thirteen years of age. They were taken to the police station for the purpose of identifying the defendant and he was the only prisoner exhibited to them. The circumstances in the present case materially differ from those in the *Crane case*. Here the victim of a cruel beating, who had plainly seen his assailants and begged them for mercy, testified that the man who kicked and beat him after he was down was nearly six feet tall, with a pock-marked face; that he got a good look at this man's face when he stooped down to take witness' money; that the other man was shorter and had a crooked nose and "gawked down at me." The witness further testified that he went upon the streets of Chicago in search of the persons who had robbed him. His repeated visits to Grand Crossing Park show that he was not rash or overly eager in his effort to locate the guilty parties. He finally saw Fortino on the street and recognized him as one of them. He reported his discovery to the police. What brought about the arrests of Nudo and Riffice is not disclosed by the record. However, the description Fairweather gave on the stand of the men who robbed him is unchallenged for accuracy, and his refusal to implicate Riffice adds to the strength of his identification.

The jury saw and heard the witnesses. It gave credit to the testimony of Fairweather rather than to the testimony of the defendants and their witnesses. In doing so we cannot say they were unjustified. The conduct of Fairweather shows he had no motive to deceive. His identifications of the defendants were as definite as it is ordinarily possible to make. The accused faced long prison terms if convicted. Their alibi is not free from frailties.

It is true that it is corroborated by one of their basketball team mates, but no explanation is made for the failure to produce Dugal and Rocko, the other members of the regular team, and to produce Kelly and Precy, the substitute members, all of whom, the witness Pace said, were at the gymnasium on the night of the robbery. The testimony of Joseph Bruno was probably not received by the jury with much credit. He stated he was not aware he was to be a witness until about two weeks before the trial. He said his reason for knowing he was with Fortino on the night of January 24, 1933, was that he asked Fortino on the previous Saturday to go to a dance at Sixty-Third street and Drexel boulevard on the following Tuesday night. He admitted, on cross-examination, that he had met Fortino at dances at that place on many occasions.

It is not contended that the record contains any errors of law, and unless we can say that the jury was not justified in returning a verdict against the defendants it is our duty not to disturb it. (*People* v. *Martin,* 304 Ill. 494.) The court will only reverse a conviction on the evidence when it is able to say, from a careful consideration of the whole testimony, that there is clearly a reasonable and well founded doubt of the guilt of the accused. (*People* v. *Greenberg,* 302 Ill. 566.) The mere fact that a greater number of witnesses were called by the defendants than by the prosecution is not of itself sufficient to set aside a verdict. This court has frequently held that the testimony of one witness, even though denied by the accused, may be sufficient to sustain a conviction. *People* v. *Schanda,* 352 Ill. 36; *People* v. *Zurek,* 277 id. 621.

In our opinion the guilt of the defendants was shown beyond a reasonable doubt, and the judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*