THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MATTHEW A. MILLS, Defendant-Appellant.

Second District    No. 2—92—0274

Opinion filed November 29, 1993.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE QUETSCH delivered the opinion of the court:

Following a jury trial in the circuit court of Du Page County, defendant, Matthew A. Mills, was convicted of murder pursuant to the statutory felony-murder doctrine (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(a)(3) (now codified, as amended, at 720 ILCS 5/9—1(a)(3) (West 1992))) based upon charges that he fatally stabbed William "Brad"

Horton while attempting to commit the offense of armed robbery (Ill. Rev. Stat. 1989, ch. 38, par. 18—2(a) (now 720 ILCS 5/18—2(a) (West 1992))). Defendant was sentenced to a term of imprisonment of 35 years. The issues raised on appeal arise from an exchange of communications between the jury and the trial court. Apparently, during its deliberations, the jury delivered a note to the trial court containing several questions to which the trial court responded in writing. On appeal, defendant contends that the case must be remanded to the trial court to determine whether defendant and his attorney were present when the trial court prepared its response to the jury's questions. Defendant further contends that the trial court's response was improper and constitutes reversible error.

The evidence presented by the State included the testimony of David Fitzgibbon, who also had been charged with the murder of Brad Horton, but had entered into a plea agreement, pursuant to which he agreed to testify against defendant. According to Fitzgibbon, during the evening of September 2, 1990, Fitzgibbon, defendant and several other individuals, including Fitzgibbon's brother Philip, were gathered at Fitzgibbon's home in Plainfield. At some point, the group discussed whether they could obtain some marijuana. Philip said that he knew of an individual named Brad in Lombard who had marijuana. Apparently, nobody in the group had money to purchase the marijuana, but Philip suggested that they could scare Brad into giving it to them. Fitzgibbon, Philip and defendant later agreed to go to Brad's residence and obtain marijuana from him by intimidation. However, Philip mentioned that Brad collected knives and that "it could be dangerous." Accordingly, they discussed bringing weapons along "to protect [themselves]." Fitzgibbon took a baseball bat and defendant obtained a knife from his truck, at which point the three proceeded to Brad's residence.

Philip showed defendant and Fitzgibbon where Brad's apartment was located, but Philip waited in the car because Brad would recognize him. Defendant and Fitzgibbon knocked on Brad's door and indicated that Shawn Temple had sent them to get some marijuana. Philip had informed them that Temple was a good friend of Brad. Brad Horton opened the door, and defendant and Fitzgibbon walked into the apartment. Defendant's knife, which was tucked into his pants, was visible over his clothing, and Fitzgibbon carried the baseball bat. As soon as they entered the apartment, Fitzgibbon walked toward the bedroom, where, according to Philip, the marijuana was located. As Fitzgibbon approached the bedroom, defendant grabbed Brad Horton and pushed him toward the corner of the room. Fitzgib-

bon was unable to turn on any lights in the bedroom, and so he returned to the room where defendant and Horton were located. There he found the two men struggling. Horton pushed defendant away and went toward Fitzgibbon with a knife. Fitzgibbon held Horton back with the baseball bat and pinned him in a chair against a wall. The tip of Horton's knife cut Fitzgibbon's chest. Fitzgibbon started to back up toward the door, swinging the bat to keep Horton off him. Fitzgibbon got the door open, but fell in the doorway, at which point Horton jumped on him and sliced his left hand. They both stood up in the hallway, and Fitzgibbon "got [Horton] off." Fitzgibbon then ran out of the apartment building. Defendant was already outside.

Following his arrest, defendant related his account of the incident to police. He indicated that after he and Fitzgibbon entered Horton's apartment, Fitzgibbon pushed Horton into a chair and demanded to know where he kept his drugs. Horton responded that they were in the bedroom. Fitzgibbon went to the bedroom and then returned, again demanding drugs. At that point, Horton rose from the chair with a knife. Fitzgibbon started swinging the bat, and at that point, "things were going crazy." Fitzgibbon screamed for help, indicating that he had been cut. Defendant then stabbed Horton, ran to the balcony, and jumped to the ground. Defendant prepared a written statement setting forth his account of the incident. In his written statement, defendant indicated that "Dave [Fitzgibbon] pushed [Brad Horton] into a chair (not hard) then this guy pulled a knife out of the [cushion] [and] started swinging [and] wrestling with Dave trying to stab him [which] he did, so I didn't want my friend to get killed so I did the only thing I could think of [and] stabbed him [and] ran out."

Defendant first contends that because the record on appeal discloses the possibility that the trial court communicated with the jury outside the presence of defendant and his attorney, his constitutional right to be present at all stages of the proceedings involving substantial rights may have been violated. (See *People v. Lowery* (1988), 177 Ill. App. 3d 639, 643.) The basis for this contention is a note from the jury with the following questions:

> "If a point was never introduced that would help your determination of guilt or innocence, should that be considered since it leaves doubt?
>
> When does the act of home invasion stop?
>
> When does the act of attempted armed robbery stop?
>
> By opening the door, does that constitute authority to enter?"

The trial court responded in writing as follows:

"You have received all of the evidence. You must decide the case based on the evidence you have received and the instructions you have been given."                             .

Because the report of proceedings does not document any proceedings with reference to the jury's note, defendant suggests that he and his attorney may not have been present to participate in the formulation of a response to the jury's questions. Defendant requests that the case be remanded to the trial court for a hearing to determine whether he was or was not present when the exchange between the trial court and the jury occurred and to determine whether the trial court understood that it could, in its discretion, provide specific answers to the jury's questions.

We confronted requests for a remand under similar circumstances in *People v. Scott* (1989), 192 Ill. App. 3d 594, and *People v. Blalock* (1993), 239 Ill. App. 3d 830. In *Scott* we observed that "[d]efendant, as the party appealing and asserting error, has the responsibility for preserving and presenting a sufficient record of the asserted error." (*Scott*, 192 Ill. App. 3d at 598, citing *People v. Smith* (1985), 106 Ill. 2d 327.) It is true that if communications between the judge and jury occurred while defendant was not present, defendant might not become aware of the communication until the record on appeal is prepared. However, as we noted in *Scott*, Supreme Court Rule 329 (134 Ill. 2d R. 329), which is applicable in criminal cases (134 Ill. 2d R. 612(g)), permits the amendment of the record on appeal. (*Scott*, 192 Ill. App. 3d at 598.) In *Scott*, because the defendant did not avail himself of the opportunity to amend the record on appeal in accordance with the guidelines of Rule 329, we declined to "create a review procedure when a party has not complied with the applicable rules of our supreme court." 192 Ill. App. 3d at 598.

Applying these principles, we stated in *Blalock*:

"In the case at bar, we have the report of proceedings, but it is not instructive as to whether defendant and his trial counsel were present when the judge responded to the jury's notes. Appellate counsel assumes that because the record is silent on this point it must mean that defendant and his counsel were not present. We, as the reviewing court, should not be left to speculate about these matters. *** Based on the record before us, we follow *Scott* and hold that doubts arising from the incompleteness of the record will be resolved against the appellant." *Blalock*, 239 Ill. App. 3d at 841.

■ Although defendant urges us to reconsider the principles set forth in *Scott* and *Blalock*, we find the reasoning underlying these de-

cisions to be sound. By failing to avail himself of the opportunity to amend the record on appeal (for example, by means of a bystander's report), defendant would have us consider a claim of error that may be entirely hypothetical. It is not our function to do so where the defendant could have corrected the record on appeal or have made an adequate record at the trial level in the first place, to reflect any factual basis underlying the claim of error.

Defendant argues that a remand is necessary not only to determine whether defendant was present when the trial court responded to the jury's note, but also to determine whether the trial court understood that it could, in the exercise of its discretion, provide specific answers to the jury's questions. Absent an indication to the contrary, it is presumed that the trial judge correctly understood and applied the law. If anything had actually transpired during the proceedings below which might have overcome this presumption, defendant could have amended the record on appeal to reflect these circumstances and argued accordingly. Defendant is not entitled to engage in additional evidentiary proceedings in order to develop an argument that has no basis in the record and is entirely a matter of speculation.

■ Defendant next argues that, even if he and his attorney were present when the trial court formulated its response to the jury's questions, the trial court's failure specifically to answer two of the jury's questions was improper and prejudicial. Defendant requests a new trial on this basis. Defendant first challenges the trial court's failure specifically to answer the question, "if a point was never introduced that would help your determination of guilt or innocence, should that be considered since it leaves doubt?"

The following principles govern the trial court's decision how to respond to questions posed by the jury during deliberations:

> "Jurors are entitled to have their questions answered. [Citation.] A circuit court has a 'duty to instruct the jury where clarification is requested, the original instructions are incomplete, and the jurors are manifestly confused.' [Citation.] 'Where a jury has raised an explicit question on a point of law arising from the facts over which there is doubt or confusion, the court should attempt to clarify the question in the minds of the jury members.' [Citation.] Under certain circumstances, a circuit court has the duty to answer a jury's questions even if the jury received proper instructions. [Citation.]
>
> Nevertheless, under the appropriate circumstances, a circuit court 'may exercise its discretion to refrain from answering a jury's inquiries.' [Citation.] A circuit court may decline to an-

swer a jury's question if the jury instructions are 'readily understandable and sufficiently explain the relevant law' [citation], 'further instructions would serve no useful purpose' [citation], further instructions would potentially mislead the jury [citation], and the jury's inquiry involves a question of fact [citation]. A circuit court may also refuse to answer an inquiry by a jury if an answer or explanation by the court would cause the court to express an opinion which would probably direct a verdict one way or the other. [Citation.] Furthermore, if the jury's question is ambiguous and any response to the question may require 'a colloquy between the court and the jury, a further explanation of the facts, and perhaps an expression of the trial court's opinion on the evidence,' the circuit court may refuse to answer the question." *People v. Reid* (1990), 136 Ill. 2d 27, 39-40.

See also *People v. Alcala* (1993), 248 Ill. App. 3d 411, 420-21.

In the case at bar, we believe the trial court could properly conclude that the pattern jury instructions given were readily understandable and sufficiently explained the relevant law regarding the evidence in the case and the State's burden of proof. Moreover, it seems likely that the jury had some specific factual issue in mind when it posed this question. The trial court could properly have concluded that responding to the question would have required a colloquy with the jury regarding the context of its question, might additionally have required a further explanation of the facts, and could have entailed an expression of the court's opinion on the evidence. Accordingly, the trial court acted within its discretion in referring the jury to the evidence and the instructions in response to this question.

■ Defendant also contends that the trial court erred by failing to answer specifically the jury's question, "When does the act of attempted armed robbery stop?" Without citation of authority, defendant argues that the jury could have concluded that the felony of attempted armed robbery was terminated by Brad Horton's introduction of deadly force into the incident, in which case defendant could not be convicted of murder under the felony-murder doctrine. We find no merit to this argument.

Whether or not the trial court should have clarified the matter for the jury, we fail to see how an accurate answer to the jury's question could have resulted in a different verdict. Section 9—1 of the Criminal Code of 1961 (Criminal Code) provides "(a) A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death *** (3) He is attempting or

committing a forcible felony other than second degree murder." (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(a)(3) (now codified, as amended, at 720 ILCS 5/9—1(a)(3) (West 1992)).) Our supreme court has held that a killing during the course of escape from a robbery comes within the scope of the felony-murder doctrine, " 'for the crime had not been completed at the time inasmuch as the conspirators had not won their way to a place of safety.' " (*People v. Johnson* (1973), 55 Ill. 2d 62, 68-69, quoting *People v. Golson* (1965), 32 Ill. 2d 398, 408.) Clearly, defendant and Fitzgibbon had not reached a place of safety when the killing occurred, and therefore Horton's death is within the scope of the felony-murder doctrine.

We do not believe a different result must follow solely because, in addition to the threat to the success of their criminal plan, defendant and Fitzgibbon may have perceived that their personal safety was threatened. Although defendant makes no claim of self-defense (or defense of Fitzgibbon), we note that it is well established that self-defense cannot be raised as a defense to a charge of felony murder. (Ill. Rev. Stat. 1989, ch. 38, par. 7—4 (now 720 ILCS 5/7—4 (West 1992)); *People v. Moore* (1983), 95 Ill. 2d 404, 411; *People v. Baker* (1978), 57 Ill. App. 3d 401, 403.) Section 7—4 of the Criminal Code provides, in pertinent part, that the defense of justification is not available to a person who is "attempting to commit, committing, or escaping after the commission of, a forcible felony." (Ill. Rev. Stat. 1989, ch. 38, par. 7—4(a) (now 720 ILCS 5/7—4 (West 1992)).) If, however, as defendant suggests, the introduction of deadly force by the victim could be said to terminate a felony or attempted felony, this limitation would be largely illusory. To the contrary, in order to restore the right of self-defense to one committing or attempting to commit a forcible felony, there must be a "complete withdrawal such that the victim's subsequent use of force initiates a new conflict: if the situation is such that either the aggressor or the victim must suffer harm or even death, the victim clearly is the one who is entitled to such protection as the law affords." 720 ILCS 5/7—4, Committee Comments—1961, at 347-48 (Smith-Hurd 1993).

We believe that there must likewise be an overt withdrawal from the commission of or attempt to commit a forcible felony in order to avoid the consequences of the felony-murder doctrine. The statutory felony-murder doctrine represents a legislative recognition "that forcible felonies are 'so inherently dangerous' that a resulting homicide, even an accidental one, is strongly probable." (*People v. Jenkins* (1989), 190 Ill. App. 3d 115, 126; see 720 ILCS 5/9—1 Committee Comments—1961, at 15 (Smith-Hurd 1993).) Chief among the inherent

dangers of armed robbery is the danger arising from resistance by the victim, including such resistance as might put the felon himself in fear of his life. It would defeat the purposes of the felony-murder doctrine if such resistance—an inherent danger of the forcible felony—could be considered a sufficient intervening circumstance to terminate the underlying felony or attempted felony. Until the offender overtly withdraws so as to restore the victim's sense of safety, the danger to the victim from his own resistance is as significant as when the offense commenced. Whether or not defendant and Fitzgibbon might have perceived that Brad Horton had gained the upper hand in the struggle, Horton remained in jeopardy from the forces defendant and Fitzgibbon set in motion in attempting the forcible felony of armed robbery. Defendant cannot rely solely on his unexpressed perception of defeat in the attempted robbery to establish a withdrawal from or abandonment of that attempt, so as to avoid the consequences of the felony-murder doctrine.

We find the following language from a case decided by the supreme court of Idaho to be instructive: "where one enters upon the premises of another intent upon committing robbery, and displaying a deadly weapon, is met by resistance on the part of his intended victim, and such resistance or counterattack is pressed with such vigor that the would-be robber has no opportunity to abandon his plan or withdraw from the resulting conflict, and kills the intended victim in attempting to escape or to save himself from death or bodily harm, he is guilty of murder." *State v. Owen* (1953), 73 Idaho 394, 414, 253 P.2d 203, 215 (defendant fatally shot robbery victim who approached defendant with a meat cleaver and ignored defendant's command to "stop and 'let me out of here' ").

Given the evidence in the case at bar, the jury could not have concluded that the underlying felony attempt had ceased before defendant stabbed Brad Horton. Accordingly, even to the extent a specific response to the jury's question might have been appropriate, defendant suffered no prejudice from the trial court's decision not to provide a specific response.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

INGLIS, P.J., and GEIGER, J., concur.