THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTONIO LOWERY, Defendant-Appellant.

First District (4th Division)   No. 1—94—3106

Opinion filed June 6, 1996.

Rita A. Fry, Public Defender, of Chicago (Pamela Pfrang, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and Mary P. Needham, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

Following a jury trial, the defendant, Antonio Lowery, was found guilty of felony murder, armed robbery, and attempted armed robbery. He received concurrent prison terms of 35 years for murder, 20 years for robbery, and 12 years for attempted armed robbery. The defendant now appeals his convictions and sentences, raising as issues whether (1) his conviction for felony murder must be reversed as unsubstantiated and contrary to law; (2) various trial errors warrant reversal; and (3) his sentence was an abuse of discretion.

The defendant was found guilty of the felony murder of Norma Sargent, predicated upon the armed robbery of Robert Thomas and Marlon Moore, and the attempted armed robbery of Maurice Moore. The evidence at trial established that shortly before midnight on March 19, 1993, the decedent was walking at the intersection of Leland Street, which ran east to west, and Magnolia, when she was fatally struck in the left eye by a single bullet. The shot was fired from near an alley that extended northward from Leland and was located about one-half block east of Magnolia.

Maurice Moore testified that on the night of the occurrence, he, his younger brother Marlon, and Robert Thomas were returning to Maurice's car after leaving a nightclub. As they walked on Leland, they encountered the defendant and his friend "Capone" standing on the sidewalk near the alley. The defendant and Capone approached Maurice, Marlon, and Robert and walked to either side of them. Maurice testified that the defendant then held a gun to his chest and forced him about 40 feet into the alley. The evidence indicated that during this time, Capone, who was unarmed, remained at the entrance to the alley with Marlon and Robert and robbed them of jewelry, a pager, their coats and cash.

Maurice testified that inside the alley, the defendant instructed him to remove his jacket. Instead, Maurice grabbed the barrel of the defendant's gun with two hands and began struggling over it with the defendant. Maurice testified that the gun discharged once during the struggle, but that he "wasn't about to let it go." When the shot was fired, both Capone and Robert fled the scene, and Maurice summoned Marlon to come to his assistance.

Marlon ran towards Maurice and the defendant, both of whom were still holding the gun, and struck the defendant in the face with his fist. The defendant and Marlon exchanged a few more punches while the defendant kept one hand on the weapon. Maurice testified that during the fight, he and Marlon were trying to pull the defendant towards the front of the alley so they could call for help. After a 7- to 10-minute struggle, they succeeded in getting the fight out of the alley and onto a grassy area near the sidewalk adjacent to Leland. As the three continued to fight over the gun, it discharged a second and third time. Maurice indicated that when the shots were fired, the defendant's hand was positioned on the handle and lower part of the weapon.

Maurice testified that he and Marlon subsequently began striking the defendant and that, at this point, the defendant suddenly dropped the gun and fled westbound on Leland. Marlon immediately picked up the weapon and ran after the defendant, firing one shot at him. The defendant escaped around a corner, after which Marlon ceased chasing him and returned to Maurice. Maurice testified that just after Marlon began chasing the defendant, Maurice saw two women on the ground, one lying in a pool of blood and the other leaning over her and crying. Maurice approached the women and inquired whether they were all right. After Marlon returned, he and Maurice walked up Leland and made a left turn onto another street where they encountered the police and were arrested.

Maurice and Marlon were placed in the back of a squad car and taken back to the corner where the decedent and other woman were. Shortly thereafter, another police car arrived with Robert in the back seat, and a third vehicle drove up with the defendant in it. Using a map and photographic exhibits of the scene, Maurice testified to his position in the alley when the first shot was fired, his location at the time of the second and third shots, and the position where the decedent had been standing.

Marlon Moore's testimony substantially corroborated that of Maurice. As the three fought over the gun, Maurice and Marlon were able to move the defendant out of the alley. Marlon testified that when they were on the sidewalk, all three were bending towards

the ground with their hands on the gun, when it fired two more times. When the defendant fled down Leland, Marlon grabbed the gun and fired one shot at the defendant's legs in an effort to stop him. According to Marlon, the defendant had gone about half a block when he fired the shot. Marlon chased the defendant until he rounded a corner, and then dropped the gun and went to where Maurice was located. Marlon indicated that as he chased the defendant, he did not see the women on the corner; however, he did see them while on his way back to Maurice, and he testified that one of them was lying on the ground.

Robert testified that he ran after Capone when Capone fled after the first shot, but Capone got into a car and drove away. Robert then returned to the nightclub and summoned the police.

Through Assistant State's Attorney Stanislaus Gonsalves, the State offered a court-reported statement given by the defendant following his arrest. The defendant's account was largely consistent with those of Maurice and Marlon, but differed in some respects. The defendant stated that he forced one of the three intended robbery victims 20 or 30 feet into the alley, while Capone remained outside with the other two. Shortly thereafter, Capone and another of the three victims fled the scene, and the second man joined the fight over the gun. While the defendant and the two men struggled, a shot went off, but the fight continued, eventually moving out to Leland. At this point, the defendant lost control over the weapon and fled towards Magnolia. Contrary to Maurice's and Marlon's testimony, the defendant indicated that there were no shots fired from the time the gun discharged in the alley until Marlon obtained control of the weapon. The defendant indicated that he heard several shots immediately after he began running. The defendant also stated that when he reached the intersection of Leland and Magnolia, he saw two women walking down the street. He never saw a woman lying on the ground, but as he ran towards the corner, he heard one of the women scream. The defendant then rounded the corner and was apprehended by police and taken back to the scene.

Police and laboratory evidence established that a bullet hole was found in the rear bumper of a truck parked about 100 feet inside the alley, facing north. A bullet and shell casing were retrieved from the bed of the truck, and the bullet was determined to have come from the gun found near the scene and linked to the occurrence.

Following arguments, the jury found the defendant guilty of the first-degree murder of the decedent under the doctrine of felony murder, two counts of armed robbery against Marlon and Robert, and one count of attempted armed robbery against Maurice.

The defendant first argues that he was wrongfully convicted of murder because the decedent's death did not occur during the commission of the underlying robberies, nor was it a foreseeable consequence of his felonious conduct; instead, the death was precipitated by Marlon's intervening act of unjustifiably shooting at the defendant after the defendant had retreated from the crime. The State responds that even if the death was caused by Marlon's shot, Marlon's resistance to the attempted robbery was clearly foreseeable from the crime and fell within the purview of the felony murder doctrine.

■ The felony murder statute provides that a defendant commits first-degree murder if, when performing the acts causing the death, he was attempting or committing a forcible felony. 720 ILCS 5/9—1(a)(3) (West 1992). Illinois courts have construed this section to warrant a finding of guilt as long as (1) the defendant was a participant in a forcible felony, and (2) an innocent party was killed during its commission and as a foreseeable consequence of it. *People v. Hickman*, 59 Ill. 2d 89, 319 N.E.2d 511 (1974); *People v. Brown*, 70 Ill. App. 3d 922, 925-26, 388 N.E.2d 1253 (1979) (appeal of Brown's codefendant, Carl Tillman). Under this "proximate cause" test of felony murder, it is immaterial whether the killing was intentional or accidental, or was committed by a confederate without the connivance of the defendant or even by a third person trying to prevent the commission of the felony. 720 ILCS Ann. 5/9—1, Committee Comments—1961, at 12-13 (Smith-Hurd 1993), citing *People v. Payne*, 359 Ill. 246, 194 N.E. 539 (1935); see also *People v. Palmer*, 162 Ill. 2d 465, 487, 643 N.E.2d 797 (1994). It is reasonably foreseeable that an attempted robbery will be met with resistance during which a victim may be shot either by himself or by someone else attempting to prevent the offense, for which the perpetrators would be guilty of murder. *Hickman*, 59 Ill. 2d at 93; *Payne*, 359 Ill. at 255. Further, in *People v. Mills*, 252 Ill. App. 3d 792, 800, 624 N.E.2d 384 (1993), this court held that for purposes of the proximate cause test, the introduction of deadly force by a victim during the crime does not constitute an independent intervening factor so as to relieve the defendant from responsibility for an ensuing death.

■ We recognize that we are bound by the proximate cause theory of felony murder as adopted by our supreme court in the 1935 case of *People v. Payne*, 359 Ill. 246, 194 N.E.2d 539, and reaffirmed in *Hickman*, 59 Ill. 2d 89, 319 N.E.2d 511. See *Rickey v. Chicago Transit Authority*, 98 Ill. 2d 546, 551, 457 N.E.2d 1 (1983). However, we also point out that Illinois is one of few remaining jurisdictions still adhering to this rule. See *State v. Branson*, 487 N.W.2d 880, 882

(Minn. 1992). In recent years, most courts construing felony murder statutes with language comparable to or broader than ours have adopted the "agency" theory of felony murder. The agency theory similarly requires that the murder be the proximate result of the felony, but limits the defendant's liability to where the killing was committed either by him or an accomplice to the underlying felony. See *Branson*, 487 N.W.2d at 882 (and cases cited therein); *Campbell v. State*, 293 Md. 438, 444 A.2d 1034 (1982) (and cases cited therein); see also *Moore v. Wyrick*, 766 F.2d 1253, 1256 (8th Cir. 1985). The rationale underlying this theory is that while felony murder imputes malice to the defendant for an accidental killing, it does not impute the act of the killing itself; it is a rule of *mens rea*, not of causation. *Branson*, 487 N.W.2d at 884 & n.8. A defendant cannot be held guilty of murder unless the conduct was actually or constructively his, and this cannot be the case unless the killing was committed by him or someone acting in concert with him in furtherance of a common undertaking. *Commonwealth v. Campbell*, 89 Mass. 541, 544 (1863).

■ We conclude, however, that even under the proximate cause test, there was insufficient evidence in this case to support the defendant's conviction for felony murder. Initially, there is no dispute that the shot fired inside the alley during the struggle between the defendant and Maurice could not have been the one that struck and killed the decedent. Thus, there were only two possible ways in which the fatal shot could have been fired in this case; namely, during the fight between the defendant, Maurice and Marlon on the sidewalk, during which, according to Maurice's and Marlon's testimony, two shots discharged. Alternatively, it could have been fired by Marlon as he chased the defendant westbound on Leland. If the fatal shot was fired during the struggle on the sidewalk, the defendant's conviction would lie, because the killing would have occurred during Maurice's and Marlon's attempt to resist the defendant. See *Hickman*, 59 Ill. 2d at 94; *People v. Jenkins*, 190 Ill. App. 3d 115, 545 N.E.2d 986 (1989).

On the other hand, if Marlon's shot struck the decedent, her death would fall outside the expansive scope of felony murder. Under these circumstances, the killing would not have been caused by someone attempting to prevent the offense (*Hickman*, 59 Ill. 2d at 94; *Payne*, 359 Ill. at 255); instead, it would have resulted from a shot fired at the defendant's back after he had been disarmed and was running from the scene.

In *Mills*, the court held it foreseeable that a victim may employ deadly force while attempting to resist a felony; however, citing to the doctrine of self-defense (720 ILCS Ann. 5/7—4, Committee Comments—1961, at 347-48 (Smith-Hurd 1993)), the court also suggested

that such force may not be appropriate once the defendant has overtly withdrawn from the offense, so that the victim's safety is no longer threatened. *Mills*, 252 Ill. App. 3d at 799-800. The court reasoned that in such circumstances, the victim's use of a weapon against the defendant would constitute the initiation of a new confrontation, so as to remove the defendant from culpability for any ensuing death.

We readily acknowledge that a forcible felony includes any efforts at escape; thus, if a killing occurs in the course of the felons' flight, the perpetrators may be guilty of murder. See, *e.g.*, *Hickman*, 59 Ill. 2d 89, 319 N.E.2d 511; *People v. Allen*, 56 Ill. 2d 536, 309 N.E.2d 544 (1974); *People v. Johnson*, 55 Ill. 2d 62, 302 N.E.2d 20 (1973) (crime not completed until conspirators have won their way to a place of safety); *Brown*, 70 Ill. App. 3d 922, 388 N.E.2d 1253 (conviction upheld where defendant's vehicle, while being chased by police just after robbery, struck third car killing occupants).

In *Hickman*, the court applied felony murder to convict co-felons for the accidental killing of a police officer by another officer during their pursuit of the fleeing felons. The court reasoned that any escape attempt "invite[s] retaliation, opposition and pursuit" and a death in the course of such pursuit could be reasonably anticipated by those who undertake a violent crime. *Hickman*, 59 Ill. 2d at 94. Although the court held that a felon should foresee "retaliation" for his crime or attempted crime, we believe that this language read in context referred to the conduct of a police officer acting in the line of duty. See *Hickman*, 59 Ill. 2d at 94. As articulated by the court itself, the sole issue in that case was whether fleeing perpetrators were guilty of murder when a pursuing officer was mistakenly shot and killed by another pursuing officer. *Hickman*, 59 Ill. 2d at 90-91. Indeed, the law authorizes police to use deadly force in opposing fleeing felons when they believe it is necessary to prevent bodily harm or an escape from arrest. See 720 ILCS 5/7—5 (West 1992). Conversely, ordinary citizens are not justified in using such force against the felon once he has withdrawn in good faith from physical contact. 720 ILCS 5/7—4(c)(2) (West 1992). We are aware of no precedent holding a defendant culpable for an ordinary citizen's use of deadly force after that defendant had decisively retreated from the offense. *Cf. People v. Ellis*, 187 Ill. App. 3d 295, 543 N.E.2d 196 (1989) (defendant guilty of murder where he chased an unarmed former aggressor for two blocks and hit him in head with baseball bat).

Based on the foregoing analysis, in order to prove the defendant guilty, the State would have had to show beyond a reasonable doubt that the fatal shot was fired from the sidewalk rather than as Mar-

lon chased the defendant. Examined in the light most favorable to the State, however, the evidence fails to conclusively prove either of these scenarios. Marlon testified that when the gun discharged during the struggle on the sidewalk, all three men were bent down over the weapon, towards the ground. Marlon also indicated that when he subsequently fired at the defendant, the defendant had already run about half a block toward Magnolia, but Marlon did not yet see a woman lying on the ground; however, he did see one on the ground by the time he stopped the chase and was returning to Maurice. Further support for this was provided by the defendant, who stated that when he began running from Marlon, he saw two women standing on the corner, but after Marlon began firing at him, he heard one of them scream. Thus, the sole evidence as to the position of the decedent seems to suggest that she was still standing when Marlon began chasing the defendant, and that she screamed and then fell as a result of Marlon's shots. On the other hand, there is absolutely nothing in the testimony to indicate that the decedent had been stricken before Marlon began firing the gun. Although the State asserts that the shot could have occurred during the sidewalk struggle, it failed to furnish any evidence to prove this proposition. Therefore, it failed to prove the defendant guilty of felony murder, and we must reverse his conviction and vacate his sentence for this offense.

We also remand this case for resentencing on the defendant's armed robbery and attempted armed robbery convictions. Our review of the judge's comments in sentencing suggests that, in sentencing the defendant on these offenses, he may have considered the decedent's death as an aggravating factor, as well as the fact that the robbery victims in this case happened to "fight back" in order to avoid being killed themselves. Such considerations would be improper in light of our determination that the defendant could not be held responsible for the decedent's death. Accordingly, a remand for reconsideration of the defendant's sentence is necessary. See *People v. Ross*, 226 Ill. App. 3d 392, 396, 589 N.E.2d 854 (1992).

In light of our determination on the defendant's felony murder contention, we do not reach his remaining arguments on appeal.

Reversed and remanded.

THEIS and O'BRIEN, JJ., concur.