Docket No. 100033.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
LAVELLE HUDSON, Appellant.

*Opinion filed July 5, 2006.*


JUSTICE FITZGERALD delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Garman and Karmeier concurred in the judgment and opinion.

Justice Freeman specially concurred, with opinion, joined by Justice Kilbride.

Justice McMorrow dissented, with opinion.


**OPINION**

Defendant, Lavelle Hudson, and a cofelon robbed a barbershop. Unbeknownst to the cofelons, a plain-clothes off-duty policeman was inside receiving a haircut. In resisting the robbery, the policeman shot and killed the cofelon. Defendant was charged with, *inter alia*, first degree murder, under a felony-murder theory. 720 ILCS 5/9–1(a)(3) (West 2002). The parties tendered differing jury instruction regarding the proximate causation component of the offense to the circuit court of Cook County. The trial court accepted the State's instruction. A jury thereafter convicted defendant, and the trial court sentenced him to 22 years' imprisonment. The appellate court affirmed over a dissent. 354 Ill. App. 3d 648. The sole question in this appeal is whether the instruction sufficiently informed the jury of this state's laws regarding proximate causation in a felony-murder case. We hold that the trial court did not abuse its discretion in giving this instruction, as it adequately stated the law of proximate cause. Accordingly, we affirm the defendant's conviction and sentence.

## BACKGROUND

On July 30, 1998, the 15-year-old defendant's fellow gang members Chrispin Thomas and another man also named Lavelle picked up defendant in a maroon two-door Oldsmobile Cutlass Sierra. They told defendant that they were taking him to what they called a "lick," to rob the Fresh Barbershop, located at 259 East 115th Street in Chicago. At approximately 4:45 p.m. that day, eight or nine people were in the barbershop: five barbers and three or four customers. One of the customers receiving a haircut was an off-duty police officer, Ricky Bean, who sat in a chair under a barber's smock while in possession of his service revolver.

The defendant and Thomas entered the barbershop carrying guns, although defendant's was inoperable because the trigger had been removed. While defendant remained near the front door, Thomas walked to the back of the barbershop. Thomas pointed his revolver at chest level and waved it from side to side in the air and announced, "This is a stick-up, throw your money on the floor." After the barbers and patrons initially threw money on the floor, Thomas said "that's not enough

money" and continued waving and pointing the gun and again saying, "Hurry up, throw the money on the floor." As the victims complied, defendant reached to pick money off the floor.

Bean did not initially throw his wallet on the floor because the wallet contained his badge. When Thomas turned his back, and defendant was retrieving money from the floor, Bean pulled out his service revolver, yelling "Police, drop the gun, police," or "Freeze, police," multiple times. Thomas turned and pointed his revolver at Bean from two feet away. Bean fired, striking Thomas in the upper right arm. Thomas transferred his gun from his right hand to his left hand. Bean moved closer and placed his gun on Thomas' chest and said, "Man, drop the gun. Police. Drop the gun."

Thomas tried to point his gun at Bean and the officer fired two more times at Thomas' chest. He again told Thomas to drop the gun, and this time, Thomas complied. Bean then grabbed Thomas' right arm to maintain control of him and make sure he would not try to pick the gun back up. Meanwhile, defendant continued to retrieve money from the floor. Bean said, "Police, drop the gun." Defendant stood up and pointed the gun at the officer. Bean fired once at defendant, striking him in the leg. Defendant turned and ran out of the barbershop. Thomas died of multiple gunshot wounds.

Defendant was later apprehended at Roseland Hospital and later admitted to a substantially similar version of events in both an oral and written statement. Defendant was charged with multiple offenses, including first degree murder and attempted armed robbery. Prior to trial, the State nol-prossed all counts except for first degree murder. Defendant confirmed the events in the barbershop during his testimony at trial and also admitted to guilty pleas on two other convictions for armed robberies of barbershops that occurred in the weeks prior to the incident at Fresh Barbershop.

Both parties submitted modified versions of Illinois Pattern Jury Instructions, Criminal, No. 7.01 (4th ed. 2000) (IPI Criminal 4th) at the jury instructions conference. Defendant submitted the following instruction:

"A person commits the offense of first degree murder when he commits the offense of attempt [to commit] armed robbery and during *** the commission of that offense, the death of an individual is [the] direct and foreseeable consequence of the commission or attempt to commit that offense, and the defendant contemplated or should have contemplated that his actions could result in death."

The instruction submitted by the State read:

"A person commits the offense of first degree murder when he commits the offense of attempt [to commit] armed robbery, and during the course of the commission of the offense of attempt [to commit] armed robbery[,] he sets in motion a chain of events which cause the death of an individual.

It is immaterial whether the killing in such a case is intentional or accidental, or committed by a confederate without the connivance of the defendant or even by a third person trying to prevent the commission of the felony."

The trial court used the State's instruction as to proximate causation. After the jury returned a verdict of guilty on the sole count of first degree murder, the trial court sentenced defendant to 22 years' imprisonment.

A majority of the appellate court affirmed defendant's conviction, holding that the trial court did not abuse its discretion in giving the instruction. 354 Ill. App. 3d at 655. In so holding, the appellate court rejected defendant's argument that his due process rights were violated because the phrase "direct and foreseeable consequence" was not mentioned in the instruction. 354 Ill. App. 3d at 649, 655. The appellate court noted that " 'when a felon's attempt to commit a forcible felony sets in motion a chain of events which were or should have been within his contemplation when the motion was initiated, he should be held responsible for any death which by direct and almost inevitable sequence results from the initial criminal act.' " 354 Ill. App. 3d at 653, quoting *People v. Lowery*, 178 Ill. 2d 462, 467 (1997). The appellate court stated that the phrase

"sets in motion a chain of events" provided part of the definition of proximate cause. 354 Ill. App. 3d at 654. The court then found that the second paragraph of the instructions, taken from the committee comments to section 9–1 of the Criminal Code of 1961 (720 ILCS Ann. 5/9–1, Committee Comments–1961, at 15 (Smith-Hurd 2002)), completed the definition of proximate cause. 354 Ill. App. 3d at 654. The court therefore found that the given modified version of IPI Criminal 4th No. 7.01 sufficiently communicated the concept of proximate causation to the jury to enable it to apply the proper law to the facts. The appellate court also rejected the defendant's tendered instruction because it contained too strict a foreseeability requirement. 354 Ill. App. 3d at 655. The court stated, "defendant is only required to 'set[ ] in motion a chain of events which were or should have been within his contemplation.' [Citations.] Defendant is not required to contemplate that his actions would result specifically in death." 354 Ill. App. 3d at 655.

Presiding Justice Reid dissented, stating that the "instruction given to the jury merely requires that he set in motion the events leading up to the death." 354 Ill. App. 3d at 658 (Reid, P.J., dissentig). Presiding Justice Reid stated that he would hold that the instruction should have specifically used the language " 'and the death is a direct and foreseeable consequence of the actions' " to communicate the concept of proximate cause to the jury. (Emphasis omitted.) 354 Ill. App. 3d at 659 (Reid, P.J., dissenting). Presiding Justice Reid did, however, agree with the majority's rejection of defendant's instruction as it "raises the 'direct and foreseeable' language to the level of an element of the offense." 354 Ill. App. 3d at 659 (Reid, P.J., dissenting). We granted defendant's petition for leave to appeal. 177 Ill. 2d R. 315.

## ANALYSIS

Defendant contends that his conviction for felony murder should be reversed because the trial court abused its discretion by improperly instructing the jury as to the causation element of the felony-murder count. Specifically, according to defendant, the instructions did not refer to an essential element of

proximate causation–namely, foreseeability. Because the instruction excluded any mention of foreseeability, defendant claims his due process rights were violated because the State was not required to prove beyond a reasonable doubt every element of the crime of felony murder. The State responds that the trial court did not abuse its discretion in submitting the instruction to the jury because the instruction adequately stated the law. We agree with the State.

" 'The sole function of instructions is to convey to the minds of the jury the correct principles of law applicable to the evidence submitted to it in order that, having determined the final state of facts from the evidence, the jury may, by the application of proper legal principles, arrive at a correct conclusion according to the law and the evidence.' " *People v. Ramey*, 151 Ill. 2d 498, 535 (1992), quoting *People v. Gambony*, 402 Ill. 74, 81-82 (1948); see also *People v. Fuller*, 205 Ill. 2d 308, 343 (2002). "Our task is to determine whether the instructions given to the jury in the case at bar, ' "considered as a whole, fully and fairly announce the law applicable to the respective theories of the People and the defense." ' " *People v. Pollock*, 202 Ill. 2d 189, 210 (2002), quoting *People v. Terry*, 99 Ill. 2d 508, 516 (1984), quoting *People v. Kolep*, 29 Ill. 2d 116, 125 (1963).

We first note that the trial court properly used a non-IPI jury instruction. Supreme Court Rule 451(a) (134 Ill. 2d R. 451(a)) requires a trial court to instruct the jury pursuant to the IPI criminal instructions unless the trial court determines that the IPI instruction does not accurately state the law. Where there is no IPI jury instruction on a subject on which the court determines the jury should be instructed, the court has the discretion to give a non-IPI instruction. *Ramey*, 151 Ill. 2d at 536. Therefore, we will not disturb a trial court's decision to instruct a jury using a non-IPI instruction absent an abuse of that discretion. *Pollock*, 202 Ill. 2d at 211.

Section 9–1(a)(3) of the Criminal Code of 1961 (720 ILCS 5/9–1(a)(3) (West 2002)) provides:

> "A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death:

\* \* \*

(3) he is attempting or committing a forcible felony other than second degree murder."

Accordingly, the relevant IPI instruction on felony murder provides:

"A person commits the offense of first degree murder when he kills an individual [without lawful justification] if, in performing the acts which cause the death,

\* \* \*

[4] he [(is attempting to commit) (is committing)] the offense of \_\_\_." IPI Criminal 4th No. 7.01.

Because defendant did not perform the acts which caused cofelon Thomas' death, the parties agree this instruction does not accurately state the law applicable to the facts of this case. Therefore, the trial court properly exercised its discretion to give a non-IPI instruction.

We next determine whether the trial court's instruction submitted to the jury properly stated the law. Whether the court has abused its discretion in giving a particular non-IPI instruction will depend on whether that instruction was an accurate, simple, brief, impartial, and nonargumentative statement of the applicable law. *Pollock*, 202 Ill. 2d at 211; 177 Ill. 2d R. 451(a). Preliminarily, we reject defendant's argument that we should conduct a *de novo* review, as defendant's sole case citation in support thereof, *People v. Daniels*, 187 Ill. 2d 301 (1999), did not consider jury instructions but, rather the effect of double jeopardy protections. We therefore determine if the trial court abused its discretion in submitting the instruction to the jury.

In general, Illinois law provides that a defendant may be charged with murder pursuant to the "proximate cause" theory of felony murder. *People v. Lowery*, 178 Ill. 2d 462 (1997). The term "proximate cause" describes two distinct requirements: cause in fact and legal cause. *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 257-58 (1999). We have stated, "We believe that the analogies between civil and criminal cases in which individuals are injured or killed are so close that the

~7~

principle of proximate cause applies to both classes of cases. Causal relation is the universal factor common to all legal liability." *Lowery*, 178 Ill. 2d at 466. Legal cause "is essentially a question of foreseeability"; the relevant inquiry is "whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct." *Galman*, 188 Ill. 2d at 258. Foreseeability is added to the cause-in-fact requirement because "even when cause in fact is established, it must be determined that any variation between the result intended *** and the result actually achieved is not so extraordinary that it would be unfair to hold the defendant responsible for the actual result." 1 W. LaFave, Substantive Criminal Law §6.4, at 464 (2d ed. 2003). Although foreseeability is a necessary component of a proximate cause analysis, it need not be specifically mentioned in a jury instruction to communicate the idea of "proximate" to a jury. Thus, the IPI civil jury instruction communicates the definition of "proximate cause," as "[any] cause which, in natural or probable sequence, produced the injury complained of. [It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury.]" Illinois Pattern Jury Instructions, Civil, No. 15.01 (2005).

We set forth the general parameters of the law of proximate cause in a felony-murder case in *Lowery*, albeit without the specific mention of the cause-in-fact and legal-cause components:

> "It is equally consistent with reason and sound public policy to hold that when a felon's attempt to commit a forcible felony sets in motion a chain of events which were or should have been within his contemplation when the motion was initiated, he should be held responsible for any death which by direct and almost inevitable sequence results from the initial criminal act. Thus, there is no reason why the principle underlying the doctrine of proximate cause should not apply to criminal cases. Moreover, we believe that the intent behind the felony-murder doctrine would be thwarted if we did not hold felons responsible for the foreseeable

consequences of their actions." *Lowery*, 178 Ill. 2d at 467.

Thus, in *Lowery*, we held that the civil concepts of proximate cause are equally applicable to criminal cases.

Whether the instant fact situation can be charged as felony murder was answered by this court in *People v. Dekens*, 182 Ill. 2d 247 (1998). In *Dekens*, this court held that "liability attaches 'for any death proximately resulting from the unlawful activity–notwithstanding the fact that the killing was by one resisting the crime.' " *Dekens*, 182 Ill. 2d at 249, quoting *Lowery*, 178 Ill. 2d at 465. Further, a defendant may be liable for murder where the one resisting the crime causes the death of the defendant's cofelon. *Dekens*, 182 Ill. 2d at 252. We have affirmed our historical adherence to this form of liability in *People v. Klebanowski*, No. 100257 (May 18, 2006), in a parallel fact situation. In rejecting defendant's request that we adopt Justice Bilandic's dissent in *Dekens* (*Dekens*, 182 Ill. 2d at 254 (Bilandic, J., dissenting, joined by McMorrow, J.)), we stated, "In light of the thorough review of the proximate cause theory of liability contained in *Dekens*, the recency of the decision, and the principles of *stare decisis* [citations], we determine also that the proximate cause theory of liability is the theory applicable to the case at bar." *Klebanowski*, slip op. at 14. We therefore consider whether the instruction in this matter sufficiently stated the law of proximate cause to allow the jury to correctly apply the facts adduced in defendant's trial and arrive at a correct conclusion.

The parties do not dispute that the instruction adequately stated the cause-in-fact requirement, as the submitted instruction included the phrase "he sets in motion a chain of events which cause the death of an individual." As for whether the instruction indicated that the cause must also be "proximate," a review of the law in this state concerning proximate cause since 1935 demonstrates that the disputed language in the instant case–"it is immaterial whether the killing in such a case is intentional or accidental or committed by a confederate without the connivance of the defendant or even by a third person trying to prevent the commission of the

felony"–has long been integral to this state's felony-murder proximate cause jurisprudence.

The proximate cause theory of liability was first set forth in *People v. Payne*, 359 Ill. 246 (1935). *Dekens*, 182 Ill. 2d at 250, citing *People v. Payne*, 359 Ill. 246 (1935). As we stated in *Dekens*, "Applying the proximate cause theory, the [*Payne*] court explained that the identity of the person who fired the shot that killed the decedent was immaterial to the murder charge." *Dekens*, 182 Ill. 2d at 250. In finding that the jury had been properly instructed, the *Payne* court stated:

> "The jury, however, would not misunderstand the instruction in that respect. It reasonably might be anticipated that an attempted robbery would meet with resistance, during which the victim might be shot either by himself or someone else in attempting to prevent the robbery, and those attempting to perpetrate the robbery would be guilty of murder." *Payne*, 359 Ill. at 255.

We have previously noted that the drafters of section 9–1 of the Criminal Code of 1961 incorporated the holding of *Payne*. *Dekens*, 182 Ill. 2d at 250, citing *People v. Allen*, 56 Ill. 2d 536 (1974). The committee comments to the statute stated, in language identical to the instant jury instructions,

> "It is immaterial whether the killing in such a case is intentional or accidental, or is committed by a confederate without the connivance of the defendant [citations] or even by a third person trying to prevent the commission of the felony. People v. Payne, 359 Ill. 246, 194 N.E. 539 (1935)." 720 ILCS Ann. 5/9–1, Committee Comments–1961, at 15 (Smith-Hurd 2002).

We have recognized that this proximate cause theory was thereafter reaffirmed in *People v. Allen*, 56 Ill. 2d 536 (1974), *People v. Hickman*, 59 Ill. 2d 90 (1974), and *People v. Lowery*, 178 Ill. 2d 462 (1997). *Dekens*, 182 Ill. 2d at 251-52.

Most recently, in *People v. Dekens*, 182 Ill. 2d 247 (1998), we addressed a parallel fact situation. The *Dekens* majority addressed the question of whether "a defendant may be charged with first degree murder, on a felony-murder theory, when the decedent is a cofelon who is killed by an intended

victim of the defendant and cofelon." *Dekens*, 182 Ill. 2d at 248. The parties stipulated that an undercover officer arranged to buy narcotics from defendant. *Dekens*, 182 Ill. 2d at 248. Prior to the meeting, the defendant and the cofelon formulated a plan to rob the officer, and during the transaction, defendant pointed a shotgun at the officer. *Dekens*, 182 Ill. 2d at 248. The officer fired several shots at the defendant, and, as the officer was leaving, the cofelon grabbed him. The officer shot and killed the cofelon. This court rejected the defendant's attempt to employ an "agency theory" of liability. *Dekens*, 182 Ill. 2d at 249. The *Dekens* defendant also unsuccessfully argued that the indictment against him should have been dismissed because the "felony-murder doctrine should not apply when the person killed in the felony is an accomplice of the defendant." *Dekens*, 182 Ill. 2d at 253.

The *Dekens* court reaffirmed our holdings in the previous proximate cause cases, stating:

> "Although *Lowery*, *Hickman*, *Allen*, and *Payne* did not address the precise question raised in this appeal, we believe that our case law compels application of the felony-murder doctrine to the circumstances of this case. As *Lowery* noted, Illinois follows the proximate cause theory of felony murder, as opposed to the agency theory. Consistent with the proximate cause theory, liability should lie for any death proximately related to the defendant's criminal conduct. Thus, the key question here is whether the decedent's death is the direct and proximate result of the defendant's felony. As our cases make clear, application of the felony-murder doctrine does not depend on the guilt or innocence of the person killed during the felony or on the identity of the person whose act causes the decedent's death." *Dekens*, 182 Ill. 2d at 252.

In concluding, the *Dekens* court returned to the committee comments of the Criminal Code:

> "In explaining the intended scope of the doctrine in Illinois, the committee comments to section 9–1 of the Criminal Code of 1961 state:

'It is immaterial whether the killing in such a case is intentional or accidental, or is committed by a confederate without the connivance of the defendant *** or even by a third person trying to prevent the commission of the felony.' 720 ILCS Ann. 5/9–1, Committee Comments–1961, at 12-13 (Smith-Hurd 1993).

We believe that denying liability when the decedent is a cofelon would conflict with the legislature's adoption of the proximate cause theory." *Dekens*, 182 Ill. 2d at 254.

These committee comments are the same comments which the *Allen* court noted that the legislature had adopted in incorporating the holding of our 1935 decision in *Payne. People v. Allen*, 56 Ill. 2d 536, 545 (1974), citing Ill. Ann. Stat., ch. 38, par. 9–1, Committee Comments, at 9 (Smith-Hurd 1972).

Here, we read *Dekens* to stand for the proposition that the language adopted in the committee comments is tantamount to a definition of the legal-cause component of proximate cause, and therefore coextensive with foreseeability. In other words, we held the phrase "It is immaterial whether the killing in such a case is intentional or accidental, or is committed by a confederate without the connivance of the defendant *** or even by a third person trying to prevent the commission of the felony" is integral to our proximate cause analysis in this state.

We return to the instructions which were tendered by the parties to the trial court regarding proximate causation. At the jury instruction conference, both parties submitted modified versions of IPI Criminal 4th No. 7.01. Defendant submitted the following instruction:

"A person commits the offense of first degree murder when he commits the offense of attempt [to commit] armed robbery and during *** the commission of that offense, the death of an individual is [the] direct and foreseeable consequence of the commission or attempt to commit that offense, and the defendant contemplated or should have contemplated that his actions could result in death."

The instruction submitted by the State read:

> "A person commits the offense of first degree murder when he commits the offense of attempt [to commit] armed robbery, and during the course of the commission of the offense of attempt [to commit] armed robbery[,] he sets in motion a chain of events which cause the death of an individual.
>
> It is immaterial whether the killing in such a case is intentional or accidental, or committed by a confederate without the connivance of the defendant or even by a third person trying to prevent the commission of the felony."

Following argument, the trial court chose to give the State's instructions.

In the present review of the propriety of the instruction, we agree with the appellate court majority, which stated:

> "In the case at bar, we find that the modified version of IPI Criminal 4th No. 7.01 given sufficiently communicated the concept of proximate causation to the jury to enable it to apply the proper law to the facts. Although the phrase ' "direct and foreseeable consequence" ' may have been a more precise way of defining the concept of proximate causation, the phrase ' "sets in motion a chain of events" ' has also been used by the supreme court in characterizing this concept. The second paragraph of the given instruction, apparently taken from the committee comments to section 9–1 of the Criminal Code of 1961 (Code) (720 ILCS Ann. 5/9–1, Committee Comments–1961, at 15 (Smith-Hurd 2002)), completed the definition of proximate causation by providing examples to delineate when homicides committed by individuals other than the defendant would be considered foreseeable consequences of forcible felonies. Thus, the instruction given was not an incorrect statement of the law. See *Dekens*, 182 Ill.2d at 254, 695 N.E.2d at 477-78; *Lowery*, 178 Ill. 2d at 467, 687 N.E.2d at 976. In addition, on the facts of the present case, these examples enabled the jury to properly apply the difficult concept of proximate cause to determine that Thomas' homicide was a foreseeable

˘13˘

> result of defendant's participation in the attempted armed robbery. We further find the instruction to have been simple, brief, impartial, and free from argument. See 177 Ill. 2d R. 451(a); *Ramey*, 151 Ill. 2d at 536, 603 N.E.2d at 534. Therefore, we cannot say that the circuit court abused its discretion in choosing between the two offered instructions and in giving the State's instruction." 354 Ill. App. 3d at 654-55.

We believe that is an adequate basis to resolve this case.

We would add that the answer to the issue here–whether the second part of the jury instruction based on the committee comments sufficiently informs the jury as to this state's laws of proximate cause as do the phrases "should have been in his contemplation" or "foreseeable consequence"–is yes. The instruction mirrored the committee comments of the statute. As we have repeatedly held, this concept has been part and parcel of our felony-murder jurisprudence on proximate cause since 1935. The jury was not instructed that a mere chain reaction was sufficient to convict, but rather that a killing by a third party resisting the robbery could also be a proximate cause. Therefore, the trial court did not abuse its discretion in so instructing the jury. Accordingly, defendant's due process rights were not violated, as the State was required to prove beyond a reasonable doubt all the elements of the offense.

Finally, while we hold that the instruction was adequate and that the trial court did not abuse its discretion, in an effort to aid the bench and bar in future cases, we also note that the instruction could have stated the law of proximate cause more precisely. For example, an instruction stating that:

> "A person commits the offense of first degree murder when he commits the offense of attempt to commit armed robbery and the death of an individual results as a direct and foreseeable consequence of a chain of events set into motion by his commission of the offense of attempt to commit armed robbery.
>
> It is immaterial whether the killing is intentional or accidental, or committed by a confederate without the connivance of the defendant or by a third person trying

˘14˘

> to prevent the commission of the offense of attempt to commit armed robbery,"

would have simply and concisely stated the law on proximate cause as set forth in *People v. Lowery*, 178 Ill. 2d 462, 467 (1997), and as it applies to this case.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the appellate court affirming the judgment of the trial court.

*Affirmed.*

JUSTICE FREEMAN, specially concurring:

I agree with the majority that defendant, Lavelle Hudson, can be held responsible for the death of his cofelon, Chrispin Thomas. The death occurred as defendant and Thomas attempted to rob a barbershop. The off-duty police officer, a patron of the barbershop, shot and killed Thomas when Thomas, ignoring warnings to drop his gun, pointed the gun at the officer. "Those who commit forcible felonies know they may encounter resistance, both to their affirmative actions and to any subsequent escape." *People v. Hickman*, 59 Ill. 2d 89, 94 (1974). Thus, under the felony-murder rule, a defendant may be held responsible for a death occurring during the commission of a felony whether the fatal shot is fired by a cofelon in furtherance of the felony or by a police officer in opposition to the felony. *People v. Allen*, 56 Ill. 2d 536 (1974).

I write separately, however, to explain my views on the instruction the trial court gave to the jury. I believe the court did not properly instruct the jury on the issue of proximate cause. In my opinion, the trial court's instruction did not give suitable guidance to the jury as to the findings it needed to make to convict defendant of felony murder. The instruction was incomplete and failed to convey clearly the theory of proximate cause as it has developed in our jurisprudence over the years.

This court has consistently held that "when a felon's attempt to commit a forcible felony sets in motion a chain of

events which were or should have been within his contemplation when the motion was initiated, he should be held responsible for any death which *by direct and almost inevitable sequence* results from the initial criminal act." (Emphasis added.) *People v. Lowery*, 178 Ill. 2d 462, 467 (1997). In its holding, the majority does away with the foreseeability requirement of proximate cause, while introducing new terms into the lexicon of felony murder and proximate cause. At the same time, however, the majority acknowledges the difficulty presented by its holding and inserts *dicta* in its opinion offering an alternative instruction which harkens back to the traditional language of proximate cause. With its ruling in this case, the majority brings confusion to an established area of law.

It is my view that the better approach in analyzing the issue presented by this appeal is to acknowledge that the instruction given to the jury in this cause is defective and then engage in harmless error analysis. This court has previously held that "an error in a jury instruction is harmless if it is demonstrated that the result of the trial would not have been different had the jury been properly instructed," *People v. Pomykala*, 203 Ill. 2d 198, 210 (2003). It is my position that the evidence of defendant's guilt was so clear and convincing that no jury could have reasonably found defendant not guilty. I therefore agree with the State that because defendant suffered no prejudice as a result of the improper instruction, relief should not be granted.

ANALYSIS

As explained in *Lowery*, 178 Ill. 2d 462, Illinois follows the proximate cause theory for imposition of liability under the felony-murder rule. See also *People v. Klebanowski*, No. 100257 (June 22, 2006); *People v. Dekens*, 182 Ill. 2d 247 (1998). Although the court has borrowed the concept of proximate cause from the law of torts, we have refrained, to date, from defining the concept in terms of cause-in-fact and legal cause. Instead, the court has uniformly explained the proximate cause theory in terms of a chain of events which by direct and almost inevitable sequence results in the death for which liability is sought to be imposed. Thus, in *People v. Payne*, 359 Ill. 246 (1935), the court affirmed the defendant's

conviction for felony murder where the defendant, although not present at the scene of the robbery, had previously informed his cofelons that the victim had a large sum of money which could be obtained easily, showed the cofelons the location of the victim's home, and told the cofelons that he expected to receive $500 from the proceeds of the robbery. The court noted first that where "several persons conspire to do an unlawful act and another crime is committed in the pursuit of the common object all are alike guilty of the crime committed if it is a natural and probable consequence of the execution of the conspiracy." *Payne*, 359 Ill. at 254. The court also rejected the defendant's theory that he was only guilty of involuntary manslaughter if the victim was killed by a bullet fired by another victim in resisting the robbery. The court reasoned it "reasonably might be anticipated that an attempted robbery would meet with resistance, during which the victim might be shot either by himself or someone else in attempting to prevent the robbery, and those attempting to perpetrate the robbery would be guilty of murder. *** A killing which happens in the prosecution of an unlawful act which in its consequences naturally tends to destroy the life of a human being is murder." *Payne*, 359 Ill. at 255.

Likewise, in *Hickman*, 59 Ill. 2d at 95, the court affirmed the defendant's felony-murder conviction. Police officers were conducting surveillance at a warehouse. Three conspirators accessed the warehouse by removing a panel and a lock from the side door. When they exited the warehouse, the officers closed in. The conspirators fled upon seeing the officers. In the ensuing pursuit, one officer shot and killed another, mistakenly believing that the victim was one of the conspirators. The jury found two of the conspirators guilty of burglary and murder. The trial court, however, entered an order arresting the judgment of murder. The appellate court reversed. In affirming the judgment of the appellate court, this court reasoned.

> "Here defendants planned and committed a burglary, which is a forcible felony under Illinois law. [Citation.] One of them was armed. It was their conduct which occasioned the presence of the police. When confronted by approaching officers, the defendants

elected to flee. We have previously held that the period of time and activities involved in escaping to a place of safety are part of the crime itself. [Citation.] The defendants were repeatedly told to halt and the police identified themselves, but the defendants continued their attempt to escape. The commission of the burglary, coupled with the election by defendants to flee, set in motion the pursuit by armed police officers. The shot which killed Detective Loscheider was a shot fired in opposition to the escape of the fleeing burglars, and it was a direct and foreseeable consequence of defendants' actions. The escape here had the same effect as did the gunfire in [*People v. Allen*, 56 Ill. 2d 536 (1974)], in that it invited retaliation, opposition and pursuit. Those who commit forcible felonies know they may encounter resistance, both to their affirmative actions and to any subsequent escape. As we indicated in a recent felony-murder case, 'It is unimportant that the defendants did not anticipate the precise sequence of events that followed upon his entry into the apartment of Judy Tolbert. His unlawful acts precipitated those events, and he is responsible for the consequences.' *People v. Smith*, 56 Ill. 2d 328, 333-334." *Hickman*, 59 Ill. 2d at 94.

See also *Dekens*, 182 Ill. 2d at 254 (explaining that "the focus of the proximate cause theory is on the chain of events set in motion by the defendant"); *Allen*, 56 Ill. 2d at 545; *People v. Johnson*, 55 Ill. 2d 62, 69 (1973); *People v. Golson*, 32 Ill. 2d 398, 408-09 (1965).

As defined by this court in the cases discussed above, proximate cause encompasses the concept of foreseeability. The defendant is not liable for any and all deaths that occur concomitantly with the felony, but rather the defendant is liable when he has set in motion a chain of events which were or should have been within his contemplation when the motion was initiated, and which *by direct and almost inevitable sequence* results in the death. Liability is imposed precisely because those who commit forcible felonies know that they

may encounter resistance, both to their affirmative actions and to any subsequent escape.

Looking to the instruction at issue in the present case, it is clear that the instruction was overly broad and did not convey the concept of foreseeability to the jury. In the first part of the instruction, the jury was told that:

> "A person commits the offense of first degree murder when he commits the offense of attempt [to commit] armed robbery, and during the course of the commission of the offense of attempt [to commit] armed robbery[,] he sets in motion a chain of events which cause the death of an individual."

In the second part of the instruction, the jury was told that the killing may be "intentional or accidental, committed by a confederate without the connivance of the defendant or even by a third person trying to prevent the commission of the felony." The problem, however, is that the "examples" contained in the second part of the instruction *did not serve to limit* the killings for which a defendant may be held liable beyond the requirement in the first part of the instruction that the defendant have set in motion a chain of events which causes the death.

The following illustration highlights the troublesome aspect of the instruction. Defendant X robs an individual at gunpoint. During the robbery, defendant X accidentally discharges the gun. At the forest preserve two blocks away, the victim is riding a horse. The horse bolts at the sound of the gunshot, crosses a busy street, and throws the victim to the ground. An oncoming car cannot stop in a timely fashion and runs over the victim, inflicting the injuries that result in the death. The victim's death occurred during the course of the robbery. Indeed, the victim's death was the result of a chain of events initiated by defendant X. Thus, under the first part of the instruction, defendant X may be held liable for the death. Looking to the second part of the instruction, is there any limitation imposed upon the killing for which defendant X may be liable? Hardly. We are simply told that the death may be accidental or intentional, committed by a confederate or by a third party. Indeed, in my example, the

death was accidental and was the result of a chain of events set into motion by defendant X.

Presiding Justice Reid, in dissent from the appellate court opinion, proffered the following instruction for consideration:

> " 'A person commits the offense of first degree murder when he commits the offense of attempt armed robbery and during the course of the commission of the offense of attempt armed robbery he sets in motion a chain of events which causes the death of an individual and the death is a direct and foreseeable consequence of the actions. It is immaterial whether the killing in such a case is intentional or accidental or committed by a confederate without the connivance of the defendant or even by a third person trying to prevent the commission of the felony. To sustain the charge of first degree murder, the State must prove *** that the defendant, or one for whose conduct he is legally responsible, was committing the offense of attempt armed robbery; and, second, that during the course of the commission of the offense of attempt armed robbery, the defendant, or one for whose conduct he is legally responsible, set in motion a chain of events that, as a direct and foreseeable consequence thereof, caused the death of Chrispin Thomas. And, third, that the defendant did not act under compulsion. If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty. If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty.' " (Emphasis omitted.) 354 Ill. App. 3d at 659 (Reid, P.J., dissenting).

I agree with Presiding Justice Reid that such an instruction provides appropriate guidance for the just application of the proximate cause theory of felony murder and the core concept of foreseeability. I note that, in affirming defendant's conviction, the appellate court majority candidly admitted that "based on the supreme court's rationale in *Lowery*, the best wording for

an instruction on proximate causation in felony murder would include either the phrase 'direct and foreseeable consequence' or, alternatively, the phrase 'sets into motion a chain of events which were or should have been within his contemplation when his actions were initiated.' " 354 Ill. App. 3d at 655.

Rather than analyze the instruction at bar in light of our established precedent on proximate cause, the majority introduces new terms into the lexicon of felony murder, bringing confusion to an established area of law. The majority informs us that "[t]he term 'proximate cause' describes two distinct requirements: cause in fact and legal cause." Slip op. at 7. The majority then states:

> "Legal cause 'is essentially a question of foreseeability'; the relevant inquiry is 'whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct.' [Citation.] Foreseeability is added to the cause-in-fact requirement because 'even when cause in fact is established, it must be determined that any variation between the result intended *** and the result actually achieved is not so extraordinary that it would be unfair to hold the defendant responsible for the actual result.' [Citation.] Although foreseeability is a necessary component of a proximate cause analysis, it need not be specifically mentioned in a jury instruction to communicate the idea of 'proximate' to a jury." Slip op. at 7.

Having laid the foundation for a discussion of cause in fact and legal cause, the majority tells us that the court "set forth the general parameters of the law of proximate cause in a felony-murder case in *Lowery*, albeit without the specific mention of the cause-in-fact and legal-cause components." Slip op. at 7. There follows a discussion of proximate cause, devoid of the terms cause in fact and legal cause. Slip op. at 7-8. The majority then informs us the parties do not dispute that the first part of the instruction establishes the cause in fact requirement. Slip op. at 8.

Turning to the concept of legal cause, the majority states:

"As for whether the instruction indicated that the cause must also be 'proximate,' a review of the law in this state concerning proximate cause since 1935 demonstrates that the disputed language in the instant case [the language of the second part of the instruction] has long been integral to this state's felony-murder proximate cause jurisprudence." Slip op. at 8-9.

The majority launches into a second discussion of proximate cause, once more devoid of the terms cause in fact and legal cause, and concludes that the language of the second part of the instruction "is tantamount to a definition of the legal cause component of proximate cause, and therefore coextensive with foreseeability" Slip op. at 11.

I do not dispute that the language of the second part of the instruction has been part of the discussion of proximate cause in previous cases. These cases nowhere intimated, however, that the language was "tantamount to a definition of the legal cause component of proximate cause." Indeed, no other Illinois case has ever discussed the proximate cause theory of felony murder in terms of cause in fact and legal cause. Nor has any case indicated that the language at issue was intended to limit the circumstances under which a defendant may be held liable for felony murder to those circumstances which are foreseeable.

To add to the confusion, the majority proffers as the rationale for its holding the reasoning of the appellate court majority. Slip op. at 12-13. Although the appellate court majority found the instruction to be a proper statement of the law, the appellate court majority nowhere explained its ruling in terms of cause in fact and legal cause. As noted above, it is the present majority which introduces the terms cause in fact and legal cause into the fabric of the proximate cause theory of felony murder. To support the new verbiage, the majority relies on an opinion which nowhere discusses the terminology at issue.

More importantly, the present majority, while acknowledging the concept of foreseeability, approves an instruction which provides no limits and no guidance to a juror regarding foreseeability. As the majority notes: "Foreseeability is added

to the cause-in-fact requirement because 'even when cause in fact is established, it must be determined that any variation between the result intended *** and the result actually achieved is not so extraordinary that it would be unfair to hold the defendant responsible for the actual result.' " Slip op. at 7, quoting 1 W. LaFave, Substantive Criminal Law §6.4, at 464 (2d ed. 2003). Looking again at the instruction, what part of the instruction limits the defendant's accountability to a death of which he is the "legal cause"? The second part of the instruction did not state that only killings under the circumstances described are attributable to a defendant. It provided examples but no limitations on the "cause-in-fact" element.

As stated, the majority initially informs the bench and bar that the jury instruction given in this matter is a correct restatement of the theory of proximate cause and the core concept of foreseeability, declaring that the language used in the instruction is "tantamount to a definition of the legal cause component of proximate cause, and therefore coextensive with foreseeability." Slip op. at 11. However, having just proclaimed that the given instruction provides a definitive statement of proximate cause and foreseeability, the majority only a few paragraphs later appears to retreat from its initial position of confidence and states that the instruction given in this cause was merely "adequate." Slip op. at 13. In what appears to be an acknowledgment that its holding in this cause is problematic, the majority believes it necessary to "aid the bench and bar in future cases" by noting that "the instruction could have stated the law of proximate cause more precisely." Slip op. at 13. Despite holding that the given instruction did not violate defendant's rights to due process in the matter at bar, the majority nevertheless deems it appropriate to insert *dicta* in its opinion to guide future cases. The majority offers alternative language for the instruction which "would have simply and concisely stated the law on proximate cause *** as it applies to this case." Slip op. at 14. I note that the language proffered by the majority harkens back to the traditional language of proximate cause and mirrors the language advocated by defendant in his brief to this court. Although the majority states

that its *dicta* will assist the bench and bar in future cases, I disagree. The majority's suggestion of an alternative instruction after having upheld the given instruction sends mixed signals to our courts and practitioners, and will engender confusion and additional litigation.

It is my position that the majority could have avoided engaging in this contrarian exercise by simply holding that the jury instruction given in this case was deficient and then applying a harmless error analysis to determine whether the result of the trial would have been different had the jury been properly instructed. *Pomykala*, 203 Ill. 2d at 210; *People v. Johnson*, 146 Ill. 2d 109, 137 (1991). In its brief to this court, the State contends that even if the instruction proffered to the jury in this case was erroneous, any error is harmless on the facts presented, as defendant's guilt is clear. I agree. Based upon the facts in the cause at bar, the outcome of the trial would have been the same, and, accordingly, defendant suffered no prejudice. In other words, the evidence of defendant's guilt was so clear and convincing as to render the error harmless beyond a reasonable doubt. *Pomykala*, 203 Ill. 2d at 210.

CONCLUSION

As this court explained in *People v. Dennis*, 181 Ill. 2d 87, 105 (1998):

> "Felony murder seeks to deter persons from committing forcible felonies by holding them responsible for murder if a death results. [Citation.] Because of the extremely violent nature of felony murder, we seek the broadest bounds for the attachment of criminal liability. For that reason, in felony murder, *** [a] defendant may be found guilty of felony murder regardless of a lack either of intent to commit murder [citation], or even connivance with a codefendant [citation]. Our continued adherence to a proximate cause approach is further exemplary of how broadly we seek to extend the reaches of criminal liability in the case of felony murder."

While I agree that liability should be imposed under the theory of proximate cause for the killing at issue, I also suggest that the theory of proximate cause does not impose liability for any and every death that occurs concomitantly with a felony. As this court has repeatedly held, a defendant may be held liable only where he has set in motion a chain of events which were or should have been within his contemplation when the motion was initiated, and which *by direct and almost inevitable sequence* results in the death. See *Lowery*, 178 Ill. 2d at 467. It is precisely because the theory of proximate cause is intended to cast a broad net that I believe it must be tempered by judicious application of instructions properly conveying the theory of proximate cause and its core element of foreseeability.

In the present case, liability is imposed on defendant for the death of his cofelon Thomas at the hands of the off-duty police officer. The instruction, however, failed to limit defendant's liability to a death proximately caused by his actions. Although I agree with the result reached by the majority, based upon the weight of the evidence at defendant's trial, I cannot agree with the majority's rejection of the salutary limits provided by the concept of foreseeability in its holding, and cannot countenance the confusion it engenders by its *dicta* which appears contrary to its holding.

JUSTICE KILBRIDE joins in this special concurrence.

JUSTICE McMORROW, dissenting:

After a jury trial, 15-year-old defendant, Lavelle Hudson, was convicted of first degree murder based on the commission of a felony (felony murder). The charge of murder was premised on the death of Chrispin Thomas, who was shot and killed by an off-duty police officer who happened to be a customer in the barbershop that defendant and Thomas attempted to rob. The issue on appeal is whether the jury was properly instructed regarding proximate cause in relation to felony murder. The majority affirms defendant's conviction,

finding that the State's proffered non-IPI jury instruction correctly states the law. I disagree.

As I explained in *People v. Klebanowski*, No. 100257 (June 22, 2006), I continue to maintain, as I did in *People v. Dekens*, 182 Ill. 2d 247, 257 (1998) (Bilandic, J., dissenting, joined by McMorrow, J.), that, "[w]here a cofelon is killed by a third party, the most direct cause of the death is the *cofelon's* participation in the felony, not the defendant's acts." Accordingly, under the proximate cause theory of liability for felony murder, a cofelon may not be held liable for murder when a third party kills an active coparticipant in the underlying felony. In my view, the felony-murder doctrine simply "does not apply to render a surviving felon guilty of murder where a cofelon is killed by a nonparticipant in the felony." *People v. Dekens*, 182 Ill. 2d at 255 (Bilandic, J., dissenting, joined by McMorrow, J.).

Here, as in *Klebanowski*, the notion that the cofelon's own participation in the felony is the most direct cause of his death is made particularly apparent by the facts. In the case at bar, defendant and Thomas entered a barbershop with the intent to commit a robbery therein. Both carried guns, although defendant's gun was inoperable. Inside the barbershop, Thomas took charge and demanded that the customers throw their money on the floor. When Thomas was not looking, an off-duty police officer, who happened to be a customer in the shop, drew his service revolver and announced, "Police, drop the gun" or "Freeze, police." Despite repeated warnings, Thomas pointed his gun at the officer, who responded by shooting Thomas in the right arm. Thomas, however, was not dissuaded. He transferred his gun to his left arm and tried to point it at the officer. The officer walked up to Thomas and, placing his gun on Thomas' chest, ordered Thomas to "Drop the gun, man." Thomas still refused to comply. Instead, Thomas tried to point his gun at the officer. Only after the officer shot Thomas in the chest twice, at point-blank range, did Thomas drop the gun. Thomas died as a result of his injuries from these gun shots.

It is abundantly clear from the above facts that Thomas' conduct, *not defendant's*, "set in motion" the chain of events which proximately caused Thomas' death at the hands of the

officer. While it is true that defendant participated in the underlying felony of armed robbery, nothing he did during the course of the felony led to the death of his cofelon. In my view, the public policy reasons for holding the felon criminally liable for murder are inapplicable in these circumstances. Thus, I would hold that a conviction for murder in these cases is fundamentally unjust. For this reason, I dissent.