NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180333-U

NO. 4-18-0333

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 1, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Adams County |
| OLIVER J. HUTT, | ) | No. 16CF752 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Robert K. Adrian, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court.
Justices DeArmond and Holder White concurred in the judgment.

**ORDER**

¶ 1 *Held:* The appellate court affirmed the trial court's judgment because a reasonable trier of fact could have found that defendant's actions proximately caused the officer's injury.

¶ 2 In December 2016, the State charged defendssant, Oliver J. Hutt, with one count of felony resisting a peace officer (720 ILCS 5/31-1(a-7) (West 2014)), one count of misdemeanor resisting a peace officer (*id.* § 31-1(a)), and two counts of criminal damage to property (*id.* § 21-1(a)(1)). The State alleged that in December 2016, defendant damaged the property of Sierra Parrish (now known as Sierra Parrish-Hutt) and then resisted the arrest of a peace officer, Terry Hagan, causing Hagan to break his hand.

¶ 3 In February 2018, the trial court conducted defendant's bench trial at which the court found him guilty of both counts of resisting a peace officer and not guilty of both counts of criminal damage to property. The court sentenced defendant to 30 months of probation.

¶ 4          Defendant appeals, alleging no reasonable trier of fact could have concluded that (1) defendant resisted arrest or (2) defendant's actions were the proximate cause of Hagan's injury.

¶ 5          We disagree and affirm the trial court's judgment.

¶ 6                              I. BACKGROUND

¶ 7                              A. Procedural History

¶ 8          In December 2016, the State charged defendant with one count of felony resisting a peace officer (*id.* § 31-1(a-7)), one count of misdemeanor resisting a peace officer (*id.* § 31-1(a)), and two counts of criminal damage to property (*id.* § 21-1(a)(1)). In total, the counts alleged that defendant damaged Sierra Parrish's property and then resisted the arrest of a peace officer, Terry Hagan, causing Hagan to break his hand.

¶ 9                              B. The Bench Trial

¶ 10          In February 2018, the trial court conducted defendant's bench trial.

¶ 11                              1. *Sierra Parrish-Hutt*

¶ 12          The State first called Sierra Parrish-Hutt who testified that in December 2016, she called the police to remove defendant from their home. Sierra explained that at the time she called the police, she and defendant were in a dating relationship and lived together and that they had since married. She testified that defendant had consumed alcohol and she wanted him removed from their home because he was causing a disturbance. Sierra said she had an argument with defendant and defendant had tossed around a Christmas tree and two tables.

¶ 13          Sierra explained that when an officer arrived at her residence, she informed him that defendant had been drinking and she wanted him removed from the residence. The officer then approached defendant to get his version of events and to obtain defendant's name and date of birth, but defendant refused to comply. Sierra testified that defendant asked the officer, " 'I'm not

under arrest. Do I need to speak with you?' " Sierra said the officer responded, " 'No, you're not.' " Defendant then said, " 'I don't have to talk to y'all,' " and walked down a hallway towards the bedroom. The officer followed.

¶ 14　　Sierra testified that when she next saw defendant and the officer, she observed the officer on top of defendant as defendant was facedown and "squirming." She testified that she reviewed a video recorded by her sister and she heard her sister say, " 'Stop resisting, Fred,' " on the recording. Sierra explained that "Fred" is a nickname for defendant.

¶ 15　　On cross-examination, Sierra testified that the police officer did not ask whether defendant had a weapon. However, defendant told the police officer he did not have a weapon.

¶ 16　　　　　　　　　　　2. *Officer Terry Hagan*

¶ 17　　Quincy police officer Terry Hagan testified that on December 25, 2016, he was dispatched to 1505 North Sixth Street to remove someone from the residence. At about the same time, Hagan received another call indicating a male had possibly attacked a female with a knife at "almost the same exact location."

¶ 18　　Hagan testified that when he arrived at the residence, he went inside the house and Sierra told him that defendant was "drunk and tearing up the house." Hagan then asked defendant to exit the house so Hagan could obtain defendant's side of the story. Hagan testified that defendant responded, "F*** you. Get out of my house. How'd you get in my house?" Hagan then asked defendant for identification, and defendant told Hagan that he would not comply with his request.

¶ 19　　Hagan explained that he did not know where defendant was going when he went down the hallway and was not familiar with the layout of the residence. Hagan told defendant to stop and place his hands behind his back, but defendant continued down the hallway. Hagan testified that he then he grabbed defendant's arm but defendant stiffened his arm. When Hagan

attempted to grab both of defendant's arms, their momentum took them into a wall. Hagan then took defendant to the ground.

¶ 20　　Hagan testified that he told defendant multiple times to place his arms behind his back. Hagan said that defendant tried to "squirm" and "crawl out from underneath [him]," and that defendant "eventually [did] get on his back." Hagan said that defendant "got his hands towards my gear and up almost at my face. I punched him once in the face. That stopped him from touching me anymore." Hagan was asked why he punched defendant, and Hagan replied, "[H]e's got his hands up towards my face. He could access my gun belt. I didn't feel comfortable with that. And he was—he could choke me. He could do anything with his hands up here. So that's why I punched him, to make him stop doing that." Hagan said that after punching defendant, his hand was "not working right." With the help of another officer, Hagan went to a local hospital and learned that he broke his hand. He required a cast for several weeks.

¶ 21　　On cross-examination, Hagan testified that he did not ask defendant if he had a weapon. He also said he told defendant that he was under arrest and to put his hands behind his back. When defense counsel confronted Hagan with his written report of the incident, Hagan acknowledged he did not say in his report that he told defendant that he was under arrest.

¶ 22　　On redirect examination, Hagan confirmed he wrote in his report that he told defendant to "stop and put his hands behind his back for not giving me his information."

¶ 23　　　　　　　　　3. *The Remainder of the Trial*

¶ 24　　Officers Taylor Dralle and Kevin Patton also testified for the State. Dralle testified that when she arrived, she saw that Hagan was on top of defendant and assisted Hagan with defendant's arrest. Officer Patton testified that defendant was intoxicated.

¶ 25　　The State rested, and defendant moved for a directed verdict on all counts. The trial

court granted the motion in relation to the criminal-damage-to-property counts but denied the motion in relation to the resisting-a-peace-officer counts. Defendant did not testify or present evidence.

¶ 26 Following arguments from both parties, the trial court found beyond a reasonable doubt that defendant resisted arrest and that his actions were the proximate cause of Hagan's injury. In May 2018, the trial court sentenced defendant to 30 months of probation.

¶ 27 This appeal followed.

¶ 28                                    II. ANALYSIS

¶ 29 Defendant appeals, alleging that no reasonable trier of fact could have concluded that (1) defendant resisted arrest or (2) defendant's actions were the proximate cause of Hagan's injury. We disagree and affirm the trial court's judgment.

¶ 30                                A. Resisting Arrest

¶ 31 In the heading of defendant's argument section, he states, "No reasonable trier of fact could have found that [defendant's] act of walking away from an interview and stiffening his arm when grabbed constituted resisting ***." However, defendant does little to develop this argument and does not cite authority to suggest that the State failed to prove that defendant resisted an authorized act. See *id.* § 31-1(a).

¶ 32 Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018) requires that an appellant's brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." (Internal quotation marks omitted.) *Country Preferred Insurance Co. v. Groen*, 2017 IL App (4th) 160028, ¶ 12, 69 N.E.3d 911. "A contention that is supported by some argument but no authority does not meet the requirements of Rule 341 and is considered forfeited." (Internal quotation marks omitted.) *Id.*

¶ 33    For these reasons, we conclude that defendant has forfeited this argument.

¶ 34                          B. Proximate Cause

¶ 35                            1. *The Law*

¶ 36    The due process clause of the fourteenth amendment requires that the State prove every element of the crime charged beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970); U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. On appeal, the question is whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found all of the essential elements of the crime proved beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *People v. Jackson*, 2020 IL 124112, ¶ 64.

¶ 37    A reviewing court will not substitute its judgment for the fact finder on questions involving the weight of evidence or the credibility of the witnesses. *Jackson*, 2020 IL 124112, ¶ 64. On appeal from a criminal conviction, the appellate court will not reverse the trial court's judgment unless the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt. *Id.*

¶ 38    A person who commits misdemeanor resisting arrest when that violation "was the proximate cause of an injury to a peace officer," is guilty of a Class 4 felony. 720 ILCS 5/31-1(a-7) (West 2014). Proximate cause requires (1) cause in fact and (2) legal cause. *People v. Hudson*, 222 Ill. 2d 392, 401, 856 N.E.2d 1078, 1084 (2006). "Legal cause is essentially a question of foreseeability; the relevant inquiry is whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct." (Internal quotation marks omitted.) *Id.*

¶ 39                            2. *This Case*

¶ 40    In this case, defendant does not challenge that the State established that defendant's actions were the cause in fact of Hagan's injury. Therefore, the question is whether defendant's

resisting arrest was the legal cause of Hagan's injury. We conclude that it was.

¶ 41 Hagan ordered defendant to stop, but defendant did not. Hagan ordered defendant to put his hands behind his back, but defendant did not. Hagan grabbed ahold of defendant, and defendant stiffened his arm. Defendant ended up on his back, and his hands got near Hagan's gear and face. Hagan testified that defendant was in a position where he could (1) grab Hagan's gun belt or (2) choke Hagan. In response, Hagan punched defendant in the face and shortly thereafter discovered his hand was injured.

¶ 42 Defendant contends that "[n]o reasonable person could predict that Hagan[,] punching [defendant] in the face was a likely consequence of [defendant's] turning from Hagan and walking away, or even a likely consequence of rolling onto his back after being taken face-first to the floor." In support of this contention, defendant cites section 7-5 of the Criminal Code of 2012 (720 ILCS 5/7-5 (West 2014)), which is the statute for a police officer's justifiable use of force.

¶ 43 As an initial matter, we note that this statute is of no value for determining proximate cause. Although considerable overlap exists between justified police actions and those that are foreseeable, not every justified action is foreseeable, and not every foreseeable action is justified. The proximate cause analysis in this case requires only that Hagan's punch be foreseeable, not that it be justified; accordingly, that is the sole question we address.

¶ 44 This is not a close case. Defendant first walked away, ignoring the order to stop. Defendant then stiffened his arm, resisting both the verbal instruction to put his hands behind his back and Hagan's grabbing his arm. Defendant then placed his hands near Hagan's gear and face. Hagan specifically testified that defendant could access his gun belt and could choke him. Reasonable people understand that when a police officer is dealing with a person who is actively

resisting arrest and escalating resistance, an officer may respond with physical force—in this case a punch. Hagan was not required to wait for defendant to punch first or to get ahold of Hagan's gear before taking action. Physical injury to an arresting officer is unquestionably a foreseeable result when defendant's resisting requires the officer to use force. This court is singularly unsympathetic to defendants who choose to resist arrest and then complain of the direct consequences of that resistance.

¶ 45　　　　Viewing the evidence in the light most favorable to the State, we conclude that a reasonable trier of fact could have found that the State proved proximate cause beyond a reasonable doubt.

¶ 46　　　　　　　　　　III. CONCLUSION

¶ 47　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 48　　　　Affirmed.